**In re MARRIAGE OF Bruce M. GUYER and Shirley Ann Guyer.**

**Upon the Petition of Bruce M. GUYER, Appellee,**

**and concerning**

**Shirley Ann GUYER, Appellant.**

**No. 3–58454.**

Supreme Court of Iowa.

Feb. 18, 1976.

Heslinga & Heslinga, Oskaloosa, for appellant.

Bruce A. Palmer, Oskaloosa, for appellee.

HARRIS, Justice.

This appeal from a decree in a dissolution of marriage case involves a custody dispute. The trial court awarded the custody of the parties' one child to the father. On the mother's appeal we affirm the custody award but modify the decree as to visitation rights.

Petitioner Bruce M. Guyer (Bruce) and respondent Shirley Ann Guyer (Shirley) were married September 4, 1970. Timothy, their one child, was born October 29, 1971.

Since September 1972 Bruce has run a sanitation-garbage route in New Sharon, Iowa. He added a second route in Oskaloosa, Iowa in November 1973. About a year after Timothy's birth Shirley began working with her husband on the routes and continued to do so until the parties separated. Her hours were somewhat irregular. It was intended that she work Monday and Thursday with a small route on Wednesday. However as a practical matter she worked Monday through Thursday.

Because of Shirley's work schedule Timothy was generally left in the home of Bruce's mother (Mrs. Guyer) from Sunday evening to Thursday noon. Occasionally Shirley would pick up Timothy for a few hours during those days. Bruce and Shirley regularly picked up Timothy Thursday noon and kept him the rest of the week.

When Bruce and Shirley separated Shirley moved out of their home without taking Timothy. Thereafter the parties stipulated to a split custody arrangement whereby Bruce had custody from Sunday nine p. m. to Friday at eight a. m. Timothy resided with, and was cared for, by Mrs. Guyer during this period of time. Shirley had custody of Timothy the remainder of the time.

Both Shirley and Bruce desire custody of Timothy. Both undoubtedly are devoted to him and both believe they can provide him proper care.

Bruce argues the pattern established for Timothy's placement should not be disturbed and that the pattern was established by Shirley's own choosing. He concedes he asked Shirley to help with the work in the business when it was begun. But he says when he later suggested Shirley discontinue work and care for Timothy she continued to work of her own choosing. Bruce offered evidence to show Shirley preferred not to stay at home. According to this evidence her willingness to surrender much of the care of Timothy to Mrs. Guyer stemmed from a felt need to be away from the confinement which attends homemaking and mothering a child.

At the time of trial Shirley was employed as a sewing machine operator, a job she began a week after the separation. She worked Monday through Thursday and occasionally on Friday. She lived at a trailer park in Pella a mile and one half from her work. Had she received custody of Timothy she planned to leave him with an "approved" day care center in Pella while she worked. Bruce testified that if he were awarded custody he and Mrs. Guyer, mainly Mrs. Guyer, would care for Timothy.

In the trial court's ruling it was stated:

"The court finds the respondent's decision to work in the business rather than to remain at home and care for Timothy reflected her own preference and was, in fact, against the wishes of petitioner. There is evidence suggesting that respondent was not a good housekeeper and she was neither satisfied nor content in the role of mother and housekeeper.

"Petitioner resides in the four bedroom modern house situated on two large lots in the town of New Sharon, Iowa, which the parties purchased about three years ago. The home is located about one and a half blocks from the New Sharon school facilities and petitioner's mother lives about ten blocks from the home of the parties.

"If custody of Timothy is awarded the petitioner, Timothy will continue to live under much the same circumstances as he has for the past one and a half years, with the major responsibility for his care during the daytime resting upon his paternal grandmother, who is 52 years of age.

"If custody of Timothy is awarded to respondent, it is respondent's plan to place him in a day care center in Pella, Iowa, during her regular daytime employment. Such a plan would place Timothy in entirely new and strange surroundings.

"The court finds Timothy has received good care from the petitioner and his mother, is in apparent good health, and has normal love and affection for both of his parents. He has a closer relationship with petitioner [Bruce] and his paternal grandmother than with respondent [Shirley]. Under all facts and circumstances shown, the court finds petitioner is better able to provide the material, physical, social, and emotional needs of the child."

The court placed Timothy with Bruce and gave Shirley visitation rights including the right to have Timothy with her from Saturday noon until six p. m. Sunday every weekend and for three weeks during the summer.

I. We listed some of the relevant factors to consider in child custody cases in *In re Marriage of Winter*, 223 N.W.2d 165, 166–167 (Iowa 1974). They need not be repeated here.

" * * * As in all custody cases the problem here presented must be determined on its own facts. (Authorities)." *In re Marriage of Peterson*, 227 N.W.2d 139, 141 (Iowa 1975). It is axiomatic that "[i]n child custody cases the first and governing consideration of the courts must be the best interest of the child." Rule 344(f)(15), Rules of Civil Procedure. We of course " * * * accord weight to trial court's findings but will not abdicate our duty to review the record de novo and determine the issue presented upon the facts disclosed of record. (Authority)." *Schoonover v. Schoonover*, 228 N.W.2d 31, 33 (Iowa 1975) and citations.

We conclude the trial court was correct in leaving custody of Timothy where the parties and events had placed him. One choice would result in a great deal of Timothy's time being spent with his paternal grandmother, the other in a day care center in Pella. His roots are now long established with his grandmother. Shirley helped establish them there.

An underlying question is a difficult one. Are the matters which point to Shirley's

inattention to the responsibilities of motherhood attributable to Bruce? The trial court addressed this question directly and, as noted, found Shirley's work pattern and life style were matters of her own choice. We agree this choice was not controlled by Bruce's demands or, ultimately, by his wishes. We are unsure any child support or alimony ordered from Bruce would result in any change.

■ II. The trial court decreed Bruce was to have care, custody and control of Timothy. It went on to grant Shirley rights of visitation including from Saturday noon until six p. m. on Sunday evening each weekend, and a summer visitation period not exceeding three weeks. We believe the weekly visits are unduly disruptive. We believe Shirley's visitations should be reduced to every other weekend with the provision for summer vacation left as ordered by the trial court.

■ III. Shirley's brief includes an application for attorney's fees rendered in connection with this appeal. We do not fix the total amount to be charged by Shirley's attorney, only the amount Bruce should contribute toward them. See *In re Marriage of Peterson*, supra, 227 N.W.2d at 143. We fix that amount at $500. Costs on appeal should be taxed to Bruce. It is so ordered.

The case must be remanded for entry of the decree modifying Shirley's visitation rights as provided. As modified the judgment of the trial court is affirmed.

Modified and affirmed.

All Justices concur except LeGRAND and MASON, JJ., who dissent.

LeGRAND, Justice (dissenting).

I cannot agree with the reasoning or the result in Division II of the majority opinion, and accordingly I dissent therefrom.

Without any stated reasons, the majority opinion apparently says visitation should not be allowed on a weekly basis because they would be "unduly disruptive."

I think this sweeping statement is both ill-advised and unjustified. Undoubtedly some cases present facts in which weekly visitation should not be ordered. There are no such circumstances here.

Under the record before us the result reached by the trial court should be affirmed. I cannot agree it is unreasonable for a non-custodial mother to see her son one day a week, which seems to be the new and rather startling formula adopted for custody cases today.

I would affirm without modification.

MASON, J., joins this dissent.