# IN THE COURT OF APPEALS OF IOWA

No. 13-1460
Filed June 11, 2014

**MEGAN E. SMITH,**
        Petitioner-Appellant,

**vs.**

**DANIEL R. BRYAN,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Worth County, Gregg R. Rosenbladt, Judge.

Megan Smith appeals the district court's order awarding Daniel Bryan physical care of their son. **AFFIRMED.**

John Slavik of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for appellant.

Richard S. Piscopo Jr. of Yunek Law Firm, P.L.C., Mason City, for appellee.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

Megan Smith appeals the order granting physical care of their son to Daniel Bryan. She argues the district court should have awarded her physical care of their child. Additionally, she asserts the court erred in denying her motion to reopen the record after trial. Because we find the grant of physical care to Daniel was in the child's best interest, and the denial of Megan's motion to reopen the record was not an abuse of discretion, we affirm.

### I. Background Facts and Proceedings.

Megan Smith and Daniel Bryan are the parents of one child, born in 2008. The parents never married, and they separated in 2010. The parents' relationship since that time has significantly deteriorated. After their separation, the parents shared physical care of the child, with each parent having the child for one week and exchanges taking place on weekends. Each parent is now involved in a relationship with another person.

In July 2010, Megan filed her petition to establish physical custody of the child and child support. She requested the child be placed in her physical care, with reasonable and liberal visitation to Daniel. Daniel answered and requested he be given physical care of their son, with reasonable visitation to Megan.

Trial commenced in June 2013, and during the course of the trial, Megan offered several exhibits that were admitted into evidence. One of Megan's exhibits, regarding a felony conviction Daniel received in 2002 for going armed with intent, was discussed in Daniel's testimony, but the exhibit was never formally offered or admitted into evidence during the testimony. Although Megan checked with the court's court reporter at the conclusion of her evidentiary

presentation to determine whether all of her exhibits had been admitted, this exhibit's lack of admission was not brought to Megan's attention.

After the trial, the court noticed the exhibit had not been admitted, and it contacted Megan's counsel. Thereafter, Megan filed an application to reopen the record, requesting, among other things, that she be allowed to offer her exhibit concerning Daniel's prior conviction. Her application noted that Daniel had not responded to her email asking whether he had an objection to the admission of the exhibit.

Ultimately, the court denied Megan's application, and it entered its order on custody, visitation, and child support the same day. The court determined Daniel should have physical care of the child, with Megan having liberal visitation rights.

Megan now appeals both orders. She contends the court erred in granting Daniel physical care of their child and abused its discretion in denying her application to reopen the record. We address her arguments in turn, starting with the district court's denial of her application to reopen the record.

## II. Discussion.

### A. Motion to Reopen Record.

In considering an application to reopen the record, the district court is in the best position to determine what is "necessary and appropriate to achieve substantial justice." *State v. Long*, 814 N.W.2d 572, 576 (Iowa 2012). To that end, the district court has broad discretion to reopen the record and consider additional evidence, and its "decision will ordinarily not be interfered with by a reviewing court." *Id.* (citation omitted); *see also Sun Valley Iowa Lake Ass'n v.*

*Anderson*, 551 N.W.2d 621, 634 (Iowa 1996). The Iowa Supreme Court has identified several "factors that the district court should consider before exercising its discretion and reopening the record," including "the admissibility and materiality of the evidence." *Long*, 814 N.W.2d at 578. Only when the court has exercised its discretion based on clearly untenable grounds or to a clearly unreasonable extent will an abuse of discretion occur. *Id.* at 576.

On appeal, Megan contends the district court's denial to reopen the record was unreasonable, noting that several of the factors delineated by our supreme court weigh in her favor, such as her reason for failing to introduce the evidence and the lack of surprise or prejudice Daniel would incur in admitting the evidence. *See id.* at 578 (listing factors). She also argues that the omitted exhibit was material to substantiate Daniel's criminal history. We disagree.

Upon our de novo review of the record, it is clear the evidence of Daniel's felony conviction was already in the record via his trial testimony. The district court specifically considered Daniel's conviction in its ruling, acknowledging: "[Daniel] has a significant criminal history, and he has been in prison before. . . . He was sent to prison on the felony charge of going armed with intent. His probation was also revoked for criminal mischief. Those events happened in 2002." Therefore, Megan's exhibit was not material to substantiate Daniel's criminal history. Consequently, we conclude the trial court did not abuse its considerable discretion in declining to reopen the record to admit the exhibit containing facts already in the record.

### *B. Physical Care.*

We review de novo decisions on child custody. *In re Marriage of Hy*nick, 727 N.W.2d 575, 577 (Iowa 2007). We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Despite our de novo review, we give strong consideration to the district court's fact findings, especially with regard to witness credibility. *Hynick*, 727 N.W.2d at 577.

In matters of child custody, the first and foremost consideration "is the best interest of the child involved." *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983); *see also* Iowa R. App. P. 6.904(3)(o). The Iowa Code provides a nonexclusive list of factors to be considered in determining a custodial arrangement that is in the best interest of a child. Iowa Code § 598.41(3) (2011); *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). We also look to the non-exclusive considerations articulated in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974) (including the needs of the child, the characteristics of the parents, the relationship between the child and each parent, and the stability and wholesomeness of the proposed environment). The goal is to assure the child "the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage." Iowa Code § 598.41(1)(a). We seek to place the child in the environment "most likely to bring [the child] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

On appeal, Megan argues that although both parents have demonstrated largely adequate parenting skills, the district court was wrong in finding the

physical-care balance tipped toward Daniel. In seeking a physical care award, she emphasizes Daniel's criminal history, and she maintains Daniel has "significant violent tendencies" that weigh against him being the child's physical caregiver. She notes she and another former paramour of Daniel have obtained no-contact orders against Daniel. She also argues Daniel interfered with her relationship with their son, casting doubt on the appropriateness of placing the child in Daniel's care.

Upon our de novo review of the record and considering the factors pertinent to physical care, we find no reason to disturb the district court's award of physical care of the parties' child to Daniel. The court ultimately found each parent had "basically appropriate parenting skills" and had "somewhat successfully participated in a 'shared care' arrangement with [their child]." The court pointed out that "[n]either parent has a history of founded child abuse reports," and both parents had had "interaction with the Iowa Department of Human Services and with counselors." The district court noted that on several issues, the testimony of Megan and Daniel, as well as their respective witnesses, "was diametrically opposed," and it was "not very comfortable with the credibility of either [Megan] or [Daniel]." The court therefore focused on "more objective factors that [were] not open to much dispute" in determining the parties' child should be placed in Daniel's physical care:

> Despite his legal problems in the past, [Daniel] seems to have stabilized in the last several years. He has a good, stable job at Stellar Industries, which provides benefits. His employment there seems to be solid. He resides with [his girlfriend] on an acreage . . . . [Daniel's girlfriend] has a daughter, . . . and Daniel also has visits at that residence with his other child, [not at issue here]. [Daniel's girlfriend] also appears to be a stable person, and

is employed at [an assisted living center]. The home life of Daniel and [his girlfriend] appears to be stable at this time, and relatively oriented toward the children.

While Megan is employed, her employment appears to be less stable. This may well be because there are fewer opportunities in this area for Megan to utilize her AA degree. She definitely expresses that she would like to move to a larger community at some time to have better job opportunities. The court is somewhat concerned that her boyfriend . . . has recently had a charge for possession of controlled substance. When stopped by law enforcement, he was on his way to the home he shares with Megan and [the parties' child].

We agree with the district court's assessment, and we defer to the court's judgment.

As the district court did, we acknowledge Daniel has a criminal history, but we agree with the court that the record evidences his criminal past is simply that—in the past. The record shows there has been a breakdown in communication on the part of both parents, and this court expects the parties will follow through with the current court-ordered parenting schedule and facilitate a healthy and nurturing environment for their child. It is time for the parents to put their child first and work together as grownups for the best interests of everyone, and we trust they both now understand the importance of showing respect for one another as they embark on many years of joint parenting. We affirm the physical care decision of the district court. Costs on appeal are assessed to Megan.

**AFFIRMED.**