**IN THE COURT OF APPEALS OF IOWA**

No. 17-1464
Filed August 1, 2018

**AMANDA L. LUCK,**
         Plaintiff-Appellee,

**vs.**

**MICHAEL F. SALMON,**
         Defendant-Appellant.
_____

         Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

         A father appeals from a district court order granting the mother physical care of their child rather than joint physical care. The father also appeals an award of attorney fees to the mother. **AFFIRMED AND REMANDED.**

         Jason W. Miller of Patterson Law Firm, L.L.P., Des Moines, for appellant.

         Sarah M. Baumgartner of Hedberg & Boulton, P.C., Des Moines, for appellee.

         Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Michael Salmon and Amanda Luck are the parents of an elementary-school-aged son, K.S. Michael appeals the grant of K.S.'s physical care to Amanda and asks us to modify the decree to order joint physical care. In the alternative, Michael asks for additional visitation. He also seeks reduction or elimination of his obligation to pay Amanda's trial attorney fees. Because we reach the same conclusions as the district court after our fresh review of the facts, we affirm the physical care and visitation provisions. We find no abuse of discretion in the award of trial attorney fees and remand for a calculation of reasonable appellate attorney fees to be paid by Michael to Amanda.

## I.    Facts and Prior Proceedings

Michael was twenty-six and Amanda was sixteen years old when they started dating. Amanda became pregnant at age seventeen. Michael and Amanda lived together for the first five years of K.S.'s life. Later they dated off-and-on, but the relationship ended in 2011. In Amanda's view, she provided the bulk of parenting for K.S. while Michael traveled for his work. For a few years, the parties shared custody, establishing their own schedule. Michael was involved in K.S.'s sports endeavors and coached his football team. Michael also had custody of his teenaged daughter from a previous relationship.

Amanda alleged Michael was violent toward her during their relationship. He was arrested for domestic violence in 2010 after trying to force Amanda into the backseat of a car and pushing her to the pavement; he later pleaded guilty to disorderly conduct. In addition, Amanda obtained a protective order against Michael in July 2016 after receiving information that he was making threats toward

her. The parties entered a consent agreement outlining Michael's visitation. Also in 2016, Amanda filed a petition to establish custody, child support, and visitation.

The district court held a trial on her petition in April and May 2017 and entered its ruling July 10, granting the parties joint legal custody. The court granted physical care to Amanda and visitation to Michael. His visitation with K.S. was set on alternating weekends and Wednesday evenings. The court also established a summer and holiday visitation schedule and ordered Michael to pay Amanda child support. Finally, the court ordered Michael to pay $20,000 in Amanda's attorney fees. Michael filed a motion to reconsider; he requested joint physical care and a reduction in attorney fees. The court declined to grant joint physical care or change the amount of the fee award.[1] But the court granted Michael's request for more visitation time by extending his Wednesday visitation to Thursday mornings.

Michael appeals the denial of his request for joint physical care. In the alternative, he asks the court to modify the schedule to increase his visitation to two days per week.

## II. Standard of Review and Legal Principles

We review custody decisions de novo. *See* Iowa R. App. P. 6.907; *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (employing same legal analysis to resolve questions concerning custody of a child born to unmarried parents as in case of divorcing parents). "[W]e give considerable weight to the sound judgment of the trial court who has the benefit of hearing and observing the parties firsthand." *In re Marriage of Kleist*, 538 N.W.2d 273, 278 (Iowa 1995).

---

[1] The court did change the repayment schedule from $1000 per month to $350 per month, in addition to regular child support.

In determining what physical care arrangement is in the child's best interests, we look to the non-exclusive factors set out in Iowa Code section 598.41(3) (2016) and *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). In assessing whether shared care is the best arrangement, we consider four factors: (1) the stability and continuity of caregiving; (2) the ability of the parents to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) the degree to which the parents generally agree about their approach to daily child-rearing matters. *See In re Marriage of Hansen*, 733 N.W.2d 683, 696-99 (Iowa 2007).

### III. Analysis

Michael asserts shared care would be in his son's best interests. He disputes the district court's application of the *Hansen* factors. Employing those factors, the district court rejected Michael's request for joint physical care and placed physical care with Amanda based on the following findings:

- Amanda has been the primary caretaker of the child since birth,
- the toxic and turbulent past relationship between the parties,
- inability to communicate and show respect to each other, considerable level of mistrust and conflict,
- Michael's history of domestic abuse and other violent behavior, and
- the court's concern as to Michael's credibility.

After reviewing the record anew, we reach the same conclusions as the district court.

Stability and continuity of caregiving stand as the traditional and key factors in deciding whether to grant shared care. *Hansen*, 733 N.W.2d at 696. These factors favor the parent who has been primarily responsible for day-to-day care of

the child leading up to the court case. *Id.*; *see also* Iowa Code § 598.41(3)(d). "[P]reservation of the greatest amount of stability possible is a desirable goal." *Id.*

Michael disputes the district court's conclusion that Amanda has been the primary caregiver. He highlights his own testimony about his past and current caregiving as well as testimony from both grandmothers and other witnesses that he was an equal parent. He blames the 2016 protective order for diminishing his parenting time and K.S.'s time with his paternal grandparents; Michael regards both consequences as detrimental to K.S.

It is true Michael has actively engaged with K.S., in particular through his participation in sports. But the credible testimony shows that from their son's birth Amanda has taken the lead in providing for his daily needs. Amanda testified that early in K.S.'s life Michael traveled frequently for work including a three-month training out of state, while she cared for K.S. on her own. At one time, Michael lived in Minnesota while Amanda lived in Iowa with K.S. When the couple broke up, K.S. stayed with Amanda. Michael continued to travel for work. He was not paying child support. Michael did not consistently exercise visitation with K.S., especially on weekends.

We appreciate the testimony from Amanda's mother and Michael's mother, who both believed the parents should have equal parenting time. But we conclude, as did the district court, that replication of the current schedule is more desirable. Before trial, K.S. was doing well in school, excelling in particular in math. Amanda noted no behavioral changes in him since she filed the petition. By her observations, Michael and K.S. continued to have a good relationship. We agree with the district court that switching to a shared-care arrangement is not in K.S.'s

best interests. And Michael already has liberal visitation, which the district court expanded upon his rehearing request.

The remaining *Hansen* factors also tilt the balance away from shared care. Michael's volatile and abusive history has undermined the parents' ability to effectively communicate or show mutual respect. The high degree of conflict in their relationship bodes poorly for shared care. We consider the parties' "lack of trust", the "controlling behavior" of one parent, and evidence of domestic violence in determining custody. *Hansen*, 733 N.W.2d at 698. A "stormy" past diminishes "the likelihood that joint physical care will provide a workable arrangement." *Id.*

The district court noted Michael's history of violence against Amanda and others.[2] Michael was found in contempt for violating the 2016 protective order. The district court believed the testimony that Michael engaged in threatening behavior against Amanda's boyfriends, including slashing tires, sending harassing text messages, and physical assaults. The court also credited Amanda's testimony that Michael repeatedly assaulted her throughout their relationship.[3] Like the district court, we conclude K.S. would not be well served by a shared-care arrangement when his parents have such a highly contentious relationship. We also see no compelling reason to modify the current schedule to give Michael an additional weekday of visitation.

---

[2] Michael pleaded guilty to domestic abuse against his older child's mother. He pleaded guilty to disorderly conduct for the incident with Amanda in 2010. He also pleaded guilty to a felony for assaulting his then-girlfriend's ex-boyfriend in 2015. It is appropriate under the *Winter* factors for the court to consider the character and stability of each parent. 223 N.W.2d at 166.

[3] The court found Michael was not credible when he under-reported his salary and over-reported the number of his dependents in two financial affidavits to the court.

Michael next contends the court abused its discretion in granting Amanda $20,000 in attorney fees. The district court enjoys discretion in awarding attorney fees and costs; we will not disturb the award absent an abuse of discretion. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa Ct. App. 1983). Amanda submitted an attorney fee affidavit seeking around $40,000; Michael did not object. The district court acknowledged its award of $20,000—half the amount requested— was still "high" but explained Amanda's counsel spent considerable time litigating this case including a five-day trial and numerous successful pretrial motions to compel. Michael earns about $86,500 per year, while Amanda's annual income is about $60,000. Given that disparity and the efforts by her counsel, we see no reason to reduce or eliminate the court's award.

Amanda requests appellate attorney fees. Appellate attorney fees are not a matter of right but rest within our discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* Amanda was forced to defend this appeal and prevailed on both issues. She earns less than Michael. Amanda is entitled to some appellate attorney fees, but counsel has not filed a financial affidavit. We remand to the district court to determine an appropriate award.

**AFFIRMED AND REMANDED.**