In re the MARRIAGE OF Joan Irene WINTER and Earl George Winter.

Upon the Petition of Joan Irene WINTER, Appellee-Cross-Appellant,

and Concerning

Earl George WINTER, Appellant-Cross-Appellee.

No. 2–57244.

Supreme Court of Iowa.

Nov. 13, 1974.

R. L. Donohue, West Union, for appellant-cross-appellee.

Meyer & Zahasky, Decorah, for appellee-cross-appellant.

Heard MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON, and McCORMICK, JJ.

McCORMICK, Justice.

Both parties appeal provisions of a trial court decree in a dissolution proceeding. Respondent Earl George Winter appeals the child custody provisions, and petitioner Joan Irene Winter appeals the financial provisions. We affirm the decree on Earl's appeal and modify it on Joan's cross-appeal.

Two questions are presented. Did trial court err in awarding Joan custody of two of the four children of the parties? And, did trial court err in fixing child support, awarding alimony, dividing the property of the parties, and taxing costs?

I. We summarized the general principles applicable to the custody issue in In re Marriage of Bowen, 219 N.W.2d 683, 687–688 (Iowa 1974):

"Our review is de novo. Although we are not bound by trial court findings we give them weight. The status of children should be quickly fixed and, thereafter, little disturbed. Siblings should usually not be separated. No hard and fast rule governs which parent should have custody. It is not a matter of reward or punishment. The issue is ultimately decided by determining under the whole record which parent can minister more effectively to the long-range best interests of the children."

These principles must be applied in light of a number of factors in each case. These factors include:

1. The characteristics of each child, including age, maturity, mental and physical health.

2. The emotional, social, moral, material, and educational needs of the child.

3. The characteristics of each parent, including age, character, stability, mental and physical health.

4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.

5. The interpersonal relationship between the child and each parent.

6. The interpersonal relationship between the child and its siblings.

7. The effect on the child of continuing or disrupting an existing custodial status.

8. The nature of each proposed environment, including its stability and wholesomeness.

9. The preference of the child, if the child is of sufficient age and maturity.

10. The report and recommendation of the attorney for the child or other independent investigator.

11. Available alternatives.

12. Any other relevant matter the evidence in a particular case may disclose.

See In re Marriage of Bowen, supra; In re Marriage of Dawson, 214 N.W.2d 131 (Iowa 1974); Jones v. Jones, 175 N.W.2d 389 (Iowa 1970); see also Christensen v. Christensen, 191 Neb. 355, 215 N.W.2d 111 (1974).

Determining what custodial arrangement will best serve the long-range interest of a child frequently becomes a matter of choosing the least detrimental available alternative for safeguarding the child's growth and development. See Goldstein, Freud, and Solnit, Beyond the Best Interests of the Child (The Free Press 1973).

Custody of four boys is involved in this case. They are Greg, Gary, George, and Gordon, ages 12, 10, 9, and 7. The boys are healthy although George had a bout with meningitis. They were slow starters in school but later achieved at nearly an average level. Gary was held an extra year in second grade. In March 1973, during a period when Gordon was living with his father, his kindergarten teacher noted in a report, "Gordon has a feeling of insecurity which is understandable with his home life being what it is."

The parents were married in 1961 during the summer after Joan graduated from high school. Earl is now 43 and Joan is 31. Earl has chronic bronchitis, but it is not incapacitating. Joan is in good physical health. There is evidence both parties have at times suffered from depression.

They farmed for Earl's mother until the mother died in 1967. Then they purchased a home in West Union, and Earl worked for a dairy. In 1972 he started a bulk gasoline delivery business. Joan worked alongside her husband during their farm years. Later she worked in a gas station and in a variety store. At the time of trial she was not employed.

Marital problems started as early as 1967. In the spring of that year, while the parties were still farming, Earl lost part of a thumb in a farm accident. His mother hired Harold Kobriger to do the farm work until Earl recovered. Kobriger moved into the parties' home. Earl testified he observed intimacies between Kobriger and Joan and asked Kobriger to move out. There is evidence Kobriger occasionally visited Joan when Earl was not present after they moved to West Union. Joan insisted her relationship with Kobriger was platonic until the fall of 1972, after the parties separated. Trial court found the evidence showed otherwise. We agree.

In August 1971 Earl started a dissolution action. During its pendency he stayed in the home and retained physical custody of the two middle children, Gary and George. Joan lived in a rented mobile home on her parents' farm with Greg and Gordon. In August 1972 Earl dismissed his action. Then he refused to return Greg and Gordon after a weekend visitation. When Joan went to the home to discuss the matter, the older two boys, Greg and Gary, ran out the back door and left with her. Joan then started the present dissolution action. Since then she has had physical custody of Greg and Gary, and Earl has had physical custody of George and Gordon.

There is evidence of considerable conflict and turmoil, much of it involving the children, during the two and one-half year separation of the parties prior to trial. Earl resisted Joan's visitation with George and Gordon. He was also reluctant to pay child support. He served five days in jail for contempt in refusing visitation. As the result of another hearing a $500 savings bond inherited by Joan was applied on Earl's back child support obligation. During the pendency of the action Joan received Aid to Dependent Children assistance.

At the time of trial Joan was seven months pregnant with a child by Kobriger,

whom she planned to marry when her marriage was dissolved. There was substantial evidence Kobriger was consistent in his affection for Joan but was not a good husband in his two prior marriages.

Each child, questioned by the court and counsel out of the presence of the parties and each other, expressed a preference to remain where he was.

The attorney for the children called Phillip R. Hastings, a Waterloo psychiatrist, as witness for the children. Dr. Hastings was director of the Northeast Iowa Mental Health Center at Decorah. He and his staff met with the parties and the children during conciliation proceedings. On the basis of these contacts, Dr. Hastings recommended that custody of Greg and Gary remain with Joan and custody of George and Gordon remain with Earl. He thought this arrangement was emotionally suitable for all parties and fit the capabilities of the parents. The attorney for the children joined this recommendation.

Various witnesses testified Joan is a good mother. Others testified Earl is a good father.

Trial court placed legal custody of the children with the Fayette County Department of Social Services for two years with physical custody of Greg and Gary with Joan and physical custody of George and Gordon with Earl, subject to supervision. The parties were to have visitation on alternate Saturdays so the children could be together every Saturday. Each parent would also have all four children for two weeks each summer. At the end of two years the physical custody arrangement was to become legal custody unless a different award was made upon application to the court by the department of social services.

Earl challenges these custody provisions. Joan does not. Earl's attack focuses on the alleged poor character of Joan and Kobriger.

■ Applying the applicable principles in light of all relevant factors, we believe the custody provisions were right. Both par-

ents express interest in the children and possess parenting capabilities. With unfortunate exceptions, they have each provided adequately for the children in their physical custody. Greg has been with Joan since August 1971; Gary has been with her since August 1972. George has been with Earl since August 1971; Gordon has been with him since August 1972. Each child is with the parent he prefers to be with. A competent psychiatrist found this suitable. The children's attorney recommended it. And the trial judge, who saw and heard the witnesses, agreed.

Joan's affair with Kobriger and her lack of candor about it denote serious flaws in her character. See In re Marriage of Dawson, supra. Similarly, the trial judge found, and we agree, that Earl was unreasonable regarding visitation and very evasive in his testimony regarding income and property matters. These findings signify serious flaws in his character. Neither parent's conduct in these respects has been conducive to the children's best interests.

The issue of divided custody is troublesome. The boys would prefer to be together. We would prefer that they could be together. Siblings should not be separated without good and compelling reasons. Jones v. Jones, 175 N.W.2d 389, 391 (Iowa 1970); see Neff v. Neff, 193 N.W.2d 82 (Iowa 1971); Tschappat v. Kluver, 193 N.W.2d 79 (Iowa 1971). However, in this case the children have already been long separated, have become adjusted to their situations, and have received adequate care. It would be unduly disruptive to upset the satisfactory relationships which have been established. In these circumstances, the disadvantage from risk of injury to the security and emotional health of two of the children is greater than any advantage to be gained by placing them all in the custody of one parent. Divided custody appears to be the least detrimental available alternative.

We urge the parties to demonstrate their expressed love for the children by cooperating regarding visitation so the boys will

have time together. If these parents are sincerely interested in the children, they will put self-indulgence and personal hostility aside and strive to provide wholesome and loving environments for them.

The case is affirmed on Earl's appeal.

II. The decree ordered Earl to pay $10 per week per child as support for Greg and Gary and $10 per week as alimony. The alimony was to terminate upon Joan's remarriage. Joan was awarded a 1963 automobile, personal belongings, and $2500 in cash. She was taxed with 20 percent of the court costs. Earl was awarded a 1969 car, his bulk gas truck and business, the residence in West Union, and $25,000 in certificates of deposit. He was ordered to pay several debts including trial court attorney fees and 80 percent of the court costs.

Earl's truck was subject to a $3000 encumbrance, secured by $3000 in certificates of deposit. The home was worth $19,000 and was debt-free. The record does not show Earl's income during 1973. He claimed he did not know it. His 1971 federal income tax return showed $9000 in income during that year, including almost $1500 interest from the certificates of deposit. A 1972 withholding statement showed his 1972 income was somewhat more. At the time of trial he had net assets of about $41,000 and Joan had none. He was employed and Joan was not.

Earl inherited an undivided one-fourth interest in his father's farm subject to a life estate in his mother. No disposition is shown of that inheritance. He testified the home was purchased with money inherited from his mother. He also asserted $22,000 of the certificates of deposit belonged to his mother's estate. However, evidence showed he was executor and sole beneficiary of that estate, and it had been fully probated and closed several years before. In addition, all the certificates were in the parties joint names in January 1971. In August 1971, at the time Earl filed his dissolution petition, he put them in his name alone. In May 1972, while that action was still pending, he caused them to be reissued in the name of the "Barbara E. Winter Estate." They were so titled at the time of trial. We agree with trial court that the evidence showed Earl owned these certificates. It is impossible to identify from the record the source of funds used to purchase the certificates or the home of the parties. Earl did not confide in Joan regarding money matters during the marriage, and he did not testify honestly about them at trial. The record does show Joan worked to advance the economic well-being of the family throughout the marriage.

Our task on Joan's cross-appeal is to ascertain whether the court's decree prescribes an equitable and just award of support money, alimony, and property. In evaluating the child support award we use the criteria explained in In re Marriage of Zoellner, 219 N.W.2d 517, 525 (Iowa 1974). In evaluating the alimony and property awards we use the criteria explained in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), excluding consideration of reward or punishment on the basis of fault. In re Marriage of Williams, 199 N.W.2d 339 (Iowa 1972).

Balancing the children's needs against Earl's ability to contribute to their support, we believe he should be ordered to pay child support of $20 per week for each child. Because of Joan's impending remarriage, the award of periodic alimony was illusory and should not have been made. The property division was not equitable. Although allocations of alimony and property have a different purpose, they are closely related in determining the amounts to be awarded. In re Marriage of Zoellner, supra, at 524. In this case we hold Joan should receive a lump sum alimony award in lieu of both periodic alimony and the $2500 payment provided in the decree. See In re Marriage of Gudenkauf, 204 N.W.2d 586, 588 (Iowa 1973); Knipfer v. Knipfer, 259 Iowa 347, 144 N.W.2d 140 (1966).

We hold Joan should be awarded the sum of $15,000 as a lump sum alimony

award. In the exceptional circumstances of this case, in view of Joan's uncertain economic and personal situation, and in consideration of the purposes of alimony and our desire to see those purposes achieved, we hold that award should be placed in trust. A corporate trustee shall be selected by the trial court. Provisions of the trust shall include power in the trustee to hold, manage, invest, and reinvest the trust funds and from time to time to pay such amounts to Joan from income and principal thereof, as, in the trustee's discretion, are reasonably required for her support and maintenance. Unless sooner exhausted the trust shall terminate when Greg and Gary shall have both reached the age of 18, unless they sooner die or are emancipated, whichever first occurs. At termination, the net remaining assets of the trust shall be paid to Joan, to be hers absolutely. Trial court may include such additional customary provisions in this trust as to it seem reasonable and justified.

Joan should not have been taxed with court costs in the trial court. The other provisions of the decree regarding property are justified.

The case is modified on Joan's cross-appeal in accordance with these determinations.

III. Joan's attorney has submitted an itemized statement for his services and expenses on appeal. We hold Earl should be ordered to pay $1000 toward Joan's attorney fee and expenses for this appeal. He shall also be taxed with costs.

The case is affirmed on respondent's appeal, modified on petitioner's appeal, and remanded for decree in accordance with this opinion.

Affirmed in part, modified in part, and remanded with directions.