# IN THE COURT OF APPEALS OF IOWA

No. 20-1606
Filed June 30, 2021

IN RE THE MARRIAGE OF ANTHONY MICHAEL RICKARD
AND KELSEY LYNN RICKARD

Upon the Petition of
**ANTHONY MICHAEL RICKARD,**
      Petitioner-Appellant,

**And Concerning**
**KELSEY LYNN RICKARD,**
      Respondent-Appellee.

_____

      Appeal from the Iowa District Court for Jones County, Chad Kepros, Judge.


      Anthony Rickard appeals the physical care and visitation provisions of the

decree dissolving his marriage to Kelsey Rickard.  **AFFIRMED.**


      Mark D. Fisher and Alexander S. Momany of Howes Law Firm, P.C., Cedar

Rapids, for appellant.

      Jenny L. Weiss of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque,

for appellee.


      Considered by Doyle, P.J. and Mullins and May, JJ.

**MULLINS, Judge.**

Anthony Rickard appeals the physical care and visitation provisions of the decree dissolving his marriage to Kelsey Rickard. Anthony argues the district court erred in failing to award him physical care of the parties' children or, in the alternative, that joint physical care should have been awarded. Anthony also argues the district court erred in not awarding him more visitation time.

## I.      Background Facts and Proceedings

Anthony and Kelsey met and began a relationship in 2013. They married in July 2015. The parties share two minor children, and Kelsey has one child from a prior relationship. For most of the marriage, Kelsey was a stay-at-home parent providing care for the children. During periods where Kelsey was employed, she worked no more than part time. Anthony earned a certificate in welding early in the marriage and has maintained consistent employment since that time. Prior to the parties' separation, Anthony's work hours were from 3:00 p.m. to 1:30 a.m. After separation, Anthony was able to modify his work hours from 5:00 a.m. to 1:30 p.m., or 3:00 p.m. if overtime was required.

Since the birth of the parties' oldest child, Kelsey has voluntarily worked with providers from Lutheran Services of Iowa. Kelsey's provider testified she worked to build skills in "communication, balancing multiple children, developing and coping with sleep patterns and illnesses, and healthy eating." Anthony's work schedule prevented him from being fully involved in services with Kelsey, but the worker testified that he was periodically involved if he was not at work or sleeping.

The parties separated and began dissolution proceedings following a physical altercation in May 2019. The parties provided conflicting testimony about

the altercation, but the district court ultimately found Kelsey's version of the event "more credible." Kelsey testified that "the parties were arguing and Anthony put his hands around her neck. [Kelsey] ran to [her oldest child's] room and that Anthony followed and said he was tired and did not mean to choke her." Kelsey filed a petition for relief from domestic abuse. Following a hearing, the parties consented to entry of a protective order but there was no finding of domestic abuse. The protective order was not in effect at the time of the dissolution trial.

Prior to trial, the parties filed a partial stipulation[1] that was approved by the court and incorporated into the decree. The parties stipulated to joint legal custody but were unable to agree on physical care.[2] The parties also stipulated to some holiday time, but were unable to agree on Easter, Memorial Day, Fourth of July, and Thanksgiving holiday time. They were also unable to agree on a visitation schedule.

The dissolution trial was held in December 2020. The district court awarded physical care of the parties' two children to Kelsey. The district court awarded Anthony visitation with the children every other weekend, and Wednesday evenings from 5:00 to 8:00 p.m. Each party was awarded four weeks of summer visitation, to be taken in nonconsecutive, one-week increments. Anthony appeals.

---

[1] The partial stipulation resolved spousal support, tax exemptions, health insurance, division of assets and liabilities (except a disputed equalization request), and attorney fees. Allocation of court costs was disputed.
[2] Consequently, child support and uncovered medical expenses for the children remained disputed, pending the physical care decision.

## II.      Standard of Review

Dissolution proceedings are equitable and are reviewed de novo.  *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020).  "We give weight to the factual determinations made by the district court; however, their findings are not binding upon [us]."  *Id.* (quoting *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015)).  We also give weight to the district court's findings on witness credibility.  *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).

## III.     Discussion

### A.      Physical Care Determination

Anthony appeals the physical care determination in two ways.  First, he argues that the district court should have granted him physical care of the children.  In the alternative, he argues the district court should have awarded the parties joint physical care.[3]  "'Physical care' means the right and responsibility to maintain a home for the minor child and provide for the routine care of the child."  Iowa Code § 598.1(7).  "The parent awarded physical care maintains the primary residence and has the right to determine the myriad of details associated with routine living, including such things as what clothes the children wear, when they go to bed, with whom they associate or date, etc."  *Hansen*, 733 N.W.2d at 694.  While considering the best interests of children, "the objective of a physical care determination is to

---

[3] In his brief, Anthony stated that Iowa has a presumption in favor of joint physical care, and cited Iowa Code section 598.41 (2019).  Section 598.41 contains no language indicating such a presumption.  In fact, our supreme court specifically found no presumption in favor of joint physical care exists.  *In re Marriage of Hansen*, 733 N.W.2d 683, 692 (Iowa 2007).

place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* at 695.

Courts examine the factors listed in section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), when making physical care determinations. *Id.* at 696. Courts must also consider stability and continuity of caregiving. *Id.* A history of "successful caregiving by one spouse in the past is a strong predictor that future care of the children will be of the same quality. Conversely, however, long-term, successful, joint care is a significant factor in considering the viability of joint physical care after divorce." *Id.* at 697 (citations omitted). In splitting care among parties, courts utilize the approximation principle, which suggests "the caregiving of parents in the post-divorce world should be in rough proportion to that which predated the dissolution," as they consider the particular facts and circumstances of each case. *Id.* Courts also consider the level of conflict between the parties and their ability to agree on day-to-day issues that arise in children's lives. *Id.* at 698–99.

In finding that shared physical care was not in the best interests of the children, the district court noted that Kelsey had historically been the primary caregiver. It also stated that Anthony "has had significant involvement with the children," who "should have substantial time with him." It also said that although there was no finding of domestic abuse that resulted from Kelsey's petition for a protective order, her version of the event was more credible than Anthony's, but that no other claim of abuse had been made. The court also noted that the parties did not appear to have a high level of conflict, but described the communication hurdles the parties face. "[E]ach of them struggle sometimes in processing

information and responding to it. Each party struggled at times to understand and respond to basic questions during trial. Each was quick to blame the other when communication between them has been less than perfect." The court found the communication issues weighed against an award joint physical care. The court also discussed the disagreement between the parties regarding basic child-rearing practices and Anthony's insistence on the use of corporal punishment. The parties also disagree about the level of supervision required for the children. The court again found the factors weighed against shared physical care.

On our review of the record, it is clear that both parents love the children and want to provide daily care. Kelsey has been the primary caregiver for the children, but after the parties separated, Anthony made changes to his work schedule to allow him to spend more time with the children. And, trial testimony revealed that when he is parenting, Anthony is an attentive parent. We defer to the district court's credibility determination on the parties' competing versions of the event that led to the protective order, but note that no finding of domestic abuse was made and the protective order was entered into voluntarily. *See Hansen*, 733 N.W.2d at 690. It is also clear that the parties struggle to maintain positive, productive communication. Text messages between the parties confirm the issues described by the district court. The parties' different practices with disciplinary techniques are problematic. The children may expect discipline in Kelsey's home to involve timeouts and discussion, and corporal punishment in Anthony's home. We need not decide what disciplinary method is the best for each child, but the conflict between the two in this case and the lack of support about discipline between the parties will be confusing, disruptive, and possibly harmful to the

children. Based on our de novo review, giving deference to the district court's thorough credibility findings, we agree with the district court that joint physical care is not in the best interests of the children. *Id.* at 700.

We must now determine which parent will provide the children "the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* at 695. While both parents love the children, the record reveals that Kelsey has provided most of the daily care for the children. The children are approaching school age, and Anthony's work schedule will not allow him to be home when the children wake up, or provide care throughout the day until the children are in school full-time. Anthony has relatives and friends who are able to care for the children when he works, but Kelsey does not work outside the home and is available to provide the same level of care she has been providing throughout the children's lives. Kelsey has also taken an active role to improve her parenting skills by engaging with Lutheran Services of Iowa. Anthony has had opportunities to interact with service providers in the past, but has failed to meaningfully do so. Finally, although the record reveals that the level of conflict between the parties is not overwhelming, Kelsey is more supportive of Anthony's relationship with the children than he is of hers. We agree with the district court that the parties are quick to blame each other when issues arise, but Kelsey acknowledges the positive role Anthony plays in the children's lives. On our de novo review of the record, we agree with the district court's finding it is in the children's best interests to grant Kelsey physical care.

B.      Visitation

Anthony argues the district court should have granted him more visitation with the children.  In determining the amount of visitation that "is reasonable and in the best interest of the child[ren]," courts shall "includ[e] liberal visitation rights where appropriate, which will assure the child[ren] the opportunity for the maximum continuing physical and emotional contact with both parents . . . , and which will encourage parents to share the rights and responsibilities of raising the child[ren]."  Iowa Code § 598.41(1)(a).  "Quality interaction with children can . . . occur within the framework of traditional visitation and does not occur solely in situations involving joint physical care."  *Hansen*, 733 N.W.2d at 695.

Anthony was awarded visitation every other weekend, beginning Friday at 5:00 p.m. until Monday when school begins or 9:00 a.m. if school is not in session.  Anthony was awarded midweek visitation every Wednesday from 5:00 p.m. to 8:00 p.m.   He was awarded four weeks of summer visitation to be taken in nonconsecutive, one-week increments.  The district court reasoned the schedule it provided would give each parent meaningful, regular contact with the children and allow them to maintain a stable routine.

Our review of the record reveals that the district court's schedule provides Anthony less parenting time with the children than he had prior to entry of the decree.  However, the district court's schedule is a reasoned approach to visitation and provides for the special circumstances of Anthony's work schedule.  The district court's visitation schedule provides Anthony with liberal visitation time, and ensures a routine schedule of regular contact with the children.  We understand the schedule is not ideal to Anthony, but it is in the best interest of the children.

**IV.     Conclusion**

Our de novo review of the record reveals that joint physical care is not in the best interests of the parties' children.  We agree that the physical care award to Kelsey will place the children in the best position for long-term growth and development.  We also agree that the district court's visitation award provides Anthony liberal time with the children and is in the best interests of the children. We affirm the decree dissolving the parties' marriage.

**AFFIRMED.**