# IN THE COURT OF APPEALS OF IOWA

No. 21-0886
Filed March 30, 2022

**GAGE STEVEN SHELLADY,**
        Petitioner-Appellee,

**vs.**

**EVANGELENE GLOVER,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Paul D. Miller,
Judge.

The mother appeals the district court's grant of physical care of the parties'
child to the father.  **AFFIRMED.**

Joseph C. Pavelich of Spies & Pavelich, Iowa City, for appellant.

Constance Peschang Stannard of Johnston, Stannard, Klesner, Burbidge
& Fitzgerald, PLC, Iowa City, for appellee.

Considered by Schumacher, P.J., Ahlers, J. and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**AHLERS, Judge.**

The parties are the mother and father of a child born in 2015. This is an appeal from the district court's grant of physical care of the child to the father.[1] Our review of physical-care determinations is de novo, which means we can decide the issue anew without being bound by the district court's fact findings, though we do give those findings weight, especially as to witness credibility.[2]

## I.    Factual & Procedural Background

To provide context to the issue on appeal, we start with some details about the parties and their history. The district court provided this accurate introductory description:

> The parties' history is one of chaos and instability. They started dating toward the end of 2012 and moved in together in 2014 when [the mother] was pregnant. They broke up in 2017. They were approximately [nineteen to twenty] years old when their child was conceived and obviously not ready to be parents. [The father] worked long hours at [a local restaurant] and drank too much. [Trial exhibits] detail [the father's] alcohol/substance related convictions from 2012 [to] 2016. [The mother] also has convictions for public intoxication [ ], trespass[,] and [operating while intoxicated] during 2013 [to] 2015. [The father] contends that alcohol was a part of the daily routine for both of them.

After the child's birth, the father continued working long hours at the restaurant and the mother stayed home with the child, providing financial contributions from a trust fund of which she was the beneficiary. While the parties continued to reside together with the child, they fought frequently. On several

---

[1] *See* Iowa Code § 598.1(7) (2018) (defining "physical care" as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child").

[2] Iowa R. App. P. 6.907 (providing for de novo review in equity cases); *Thorpe v. Hostetler*, 949 N.W.2d 1, 4–5 (Iowa Ct. App. 2020).

occasions, the father punched holes in the walls and doors of their apartment and destroyed their own property as well. On one occasion, neighbors called the police in response to hearing the ruckus in the parties' apartment caused by the father throwing a trash can partially filled with glass.

The parties' relationship began to sour more completely by the end of 2017. The mother frequently took the child to Illinois to visit the mother's parents, often for weeks at a time. By early 2018, the mother had left with the child for good, staying with her parents. After it became clear that the mother and child would not be returning, the parties worked together to arrange times for the father to visit regularly with the child, which he did. In July 2018, the father started this action by filing a petition seeking to establish his paternity and to have the child placed in his physical care. He sent money to the mother on a monthly basis to help support the child.

While this case was pending, no temporary orders were entered relating to physical care or custody of the child or for child support. By informal agreement, starting in approximately April 2019 and continuing through the summer, the child began spending more time with the father, eventually getting to the point that the father had care of the child more than the mother during the summer.

Shortly before he was scheduled to return the child at the end of the summer, the father informed the mother that he had enrolled the child in school near his new home in Iowa and the child would not be returned to the mother. Though the mother did not agree to this change, she did not take any steps to challenge it, despite being represented by counsel in this pending action. In fact, she asked for continuances of a temporary matters hearing so repeatedly the

hearing was canceled. By forgoing a temporary hearing, the mother allowed the new status quo of the child living primarily with the father to continue until trial in March 2021. During the time from August 2019 to trial, the mother was given time with the child whenever the mother wanted. The routine developed largely into an every-other-weekend-plus-holidays arrangement. In addition to in-person time with the child, the mother had largely unfettered phone and video chat access to the child when the child was with the father and vice versa.

Following trial, the district court granted physical care of the child to the father and ordered the mother to pay child support. The mother appeals. She seeks physical care of the child with a corresponding change in the child support obligation. The father does not cross-appeal, but he seeks to require the mother to pay his appellate attorney fees.

## II.    General Legal Principles & Analysis

In resolving physical-care disputes of a child born to parents who were never married, we look to the same factors as we do in resolving such disputes between divorcing parents.[3] The overriding consideration in resolving such disputes is the best interests of the child.[4] Our goal in determining which parent should have physical care of a child is to place the child in the environment most likely to bring the child to physical health, mental health, and social maturity.[5]

---

[3] *McCullough v. Cornette*, No. 20-1211, 2021 WL 1399746, at *1 (Iowa Ct. App. Apr. 14, 2021) (citing Iowa Code § 600B.40; *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988)).
[4] *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).
[5] *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

Physical-care determinations are not based on perceived fairness to the parents, but on what is best for the child.[6]  Gender is irrelevant to the decision.[7]

To decide which parent is to have physical care, we consider the nonexhaustive list of factors stated in Iowa Code section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).[8]  We do not repeat the factors here, trusting the reference to the lists to be sufficient, as the factors are well-known.  The mother focuses on two of the factors: (1) the approximation principle; and (2) a claimed history of domestic abuse.

### A.    The Approximation Principle

The approximation principle or rule refers to the desirability of dividing caregiving responsibilities following the breakup of the parents' relationship in roughly the same proportion to how the parties divided the responsibilities before the relationship's demise.[9]  The thought is that following this principle results in stability and continuity for the child.[10]

The mother contends the district court misapplied the approximation rule by looking at the fact that the father had the child primarily in his care for the nineteen-month period leading up to trial, rather than considering the mother's role as primary caregiver before the parties separated.  The mother argues the district court erred because it considered the child's care after the separation, not prior to separation, in determining which parent had been the primary caregiver.

---

[6] *Hansen*, 733 N.W.2d at 695.
[7] *Hansen*, 733 N.W.2d at 700.
[8] *Fennelly*, 737 N.W.2d at 101.
[9] *Hansen*, 733 N.W.2d at 697.
[10] *Hansen*, 733 N.W.2d at 697.

We disagree with the mother's contentions. Iowa has not adopted the approximation rule in its entirety.[11] Instead, our courts consider the approximation rule as just one factor in a multi-factored test under which no single criterion is determinative.[12] It is true that the mother was the child's primary caregiver until the child was roughly three years old. It is also true that, when the parties separated, the mother took the child and kept the child in her primary care. However, to the parties' credit, they worked with each other to maintain the child's relationship with both parents, resulting in the father having substantial time with the child, and eventually resulting in the father having the child primarily in his care. The pattern of cooperation has continued since the father took over primary responsibility for the child's care. The evidence convinces us that both parents have outgrown their past immaturity and irresponsibility and are capable of providing good care for the child. They have shown a remarkable and refreshing ability to put their differences aside and work with each other in caring for the child.

The evidence shows that the child has reaped the benefits of the parents' cooperative efforts, as she is thriving under the current arrangement. That current arrangement includes the child being established in school in Iowa, as well as enjoying the benefits of having grandparents, uncles, aunts, and cousins nearby and involved in her life. The father communicates regularly with the mother to keep her apprised of medical appointments and other areas of importance. Although the mother did not attend school conferences in person, the father placed her on speaker phone during the conferences so the mother could participate. Leaving

---

[11] *Hansen*, 733 N.W.2d at 697.
[12] *Hansen*, 733 N.W.2d at 697.

the district court's physical-care determination intact will allow the child to remain in the same school district, the same home, and near the same extended family with whom she has developed strong bonds. In short, while the mother's effort before the couple's relationship ended is an important consideration, we do not believe that single factor outweighs the benefits of leaving the child in her current placement with the father. It is in the child's best interests to remain in the environment in which she has thrived for nearly two years.

As a final point on this topic, the mother contends that by granting the father physical care, the courts are rewarding his "extrajudicial," unilateral decision to keep the child in his care beginning in August 2019. She asserts that she should not be at a disadvantage simply because she refused to give an additional tug in what she claims had become a tug-of-war between the parents.

While we commend the mother for not creating or escalating a tug-of-war over the child, we are not persuaded by the mother's argument for several reasons. For one, we note that the mother's claim ignores the fact that she unilaterally and "extrajudicially" did the same thing the father did by taking the child to Illinois against the father's wishes when the parties first separated. So, to the extent taking the child without the other parent's agreement is a negative factor, both parents' characters bear that stain in equal measure.

Second, while we believe the mother's claim that she let the child live primarily with the father in part to avoid a tug-of-war over the child, the evidence suggests an additional reason. In August 2019, the mother's life was in a degree of tumult. Her relationship with her new boyfriend had become more serious, and she planned to move to Omaha to live with him. That move involved moving away

from her support system to an area where she and the child would have no family support—support upon which the mother historically relied quite heavily. It also involved finding a place to live and securing a job. While the mother ultimately did both things, it was undoubtedly a stressful time that would have been more stressful with a young child in her care. The plan also involved starting the child in school in Illinois for a short period of time before moving the child to another state and starting her at a new school. Under these circumstances, the father keeping the child after having already done all the tasks needed to start her in school would have relieved the mother from additional stress and burden during that time. We question whether the mother opposed the living arrangement that developed as much as she now claims. We do not say this as a criticism of the mother in any way. To the contrary, her willingness to leave the child with a fit parent while she stabilized her life in an effort to become self-sufficient for the first time shows unselfishness on her part.

Finally, the mother did not have to get into an extrajudicial tug-of-war to try to get the child back in her care. As noted, she had legal counsel and an open custody file. Seeking the court's intervention to try to regain care of the child would have been a fairly straightforward endeavor. That the mother did not seek the court's assistance in regaining the child's care and caused the court to cancel the temporary matters hearing that had been scheduled suggests the mother had no strong opposition to the child living with the father.

### B.      History of Domestic Abuse

The mother claims the father's history of domestic abuse should preclude him from receiving physical care of the child.[13]  To determine whether there is a history of domestic abuse, courts consider the

> commencement of an action pursuant to section 236.3, the issuance of a protective order against the parent or the issuance of a court order or consent agreement pursuant to section 236.5, the issuance of an emergency order pursuant to section 236.6, the holding of a parent in contempt pursuant to section 664A.7, the response of a peace officer to the scene of alleged domestic abuse or the arrest of a parent following response to a report of alleged domestic abuse, or a conviction for domestic abuse assault pursuant to section 708.2A.[14]

These are but some of the considerations for the court.[15]

The evidence of domestic abuse was contested.   The district court determined that the mother failed to establish a history of domestic abuse.  Given the conflicting evidence presented by the mother and father, the district court's finding amounts to a credibility finding in the father's favor on this point to which we give considerable weight.[16]

Following our de novo review of the record and giving proper deference to the district court's credibility findings in the father's favor, we agree with the district court that the mother has not proved a history of domestic abuse between the parties.  Looking at the statutory factors to determine whether there is a domestic-

---

[13] See Iowa Code § 598.41(3)(j) (making history of domestic abuse a factor in deciding which parent should have custody).
[14] Iowa Code § 598.41(3)(j).
[15] See Iowa Code § 598.41(3)(j).
[16] See Faraj v. Faraj, No. 19-1260, 2020 WL 1887951, at *2 (Iowa Ct. App. Apr. 15, 2020) (noting we give considerable weight to credibility findings of the district court on de novo review).

abuse history, we note that the mother never sought law enforcement protection or a protective order in response to the father's behavior. While a history of domestic abuse can be found in the absence of such evidence, such evidence would be helpful to bolster the mother's otherwise unsubstantiated claims that did not convince the district court. We also note that at least one witness testified that the mother confided in her regarding details of problems she was having with the father, but, during those conversations, the mother never mentioned any physical abuse or fears of such abuse by the father.

We also note that much of the mother's evidence of alleged abuse focused on events that occurred several years before trial, long before both parties matured and cleaned up their acts. The father also offered ample evidence regarding his improved maturity and behavior since the parties' separation. He significantly reduced his drinking—a major contributor to his unacceptable behavior. He has a stable home and job and meaningful support from his extended family. By all accounts, he has significantly stabilized his life in a manner that has reduced if not eliminated any explosive tendencies he exhibited when the parties were together. Accordingly, we find the district court properly concluded that there was not a history of domestic abuse that precluded granting the father physical care.

## III.    Appellate Attorney Fees

The father requests that we order the mother to pay his appellate attorney fees. In an action to determine physical care, Iowa Code section 600B.26 permits an award of appellate attorney fees to the prevailing party.[17] An award of appellate

---

[17] *McCullough*, 2021 WL 1399746, at *3.

attorney fees is not a matter of right.[18] Instead, it rests in our discretion.[19] "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal."[20] While the father is the prevailing party and has some need for an appellate attorney fee award, the mother is of modest means and does not have the ability to pay. Therefore, we decline to order the mother to pay the father's appellate attorney fees.

## IV. Conclusion

Following our de novo review, the district court properly granted physical care of the child to the father, and we affirm. We reject the father's claim for appellate attorney fees.

**AFFIRMED.**

---

[18] *McCullough*, 2021 WL 1399746, at *3.
[19] *McCullough*, 2021 WL 1399746, at *3.
[20] *McCullough*, 2021 WL 1399746, at *3 (quoting *In re Marriage of Hoffman*, 891 N.W.2d 849, 853 (Iowa Ct. App. 2016)).