**IN THE COURT OF APPEALS OF IOWA**

No. 22-1552
Filed March 8, 2023

**ROBERT J. STANLEY,**
 Plaintiff-Appellee,

**vs.**

**SIERRA W. WINTERS,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Plymouth County, Duane E. Hoffmeyer, Judge.

Sierra Winters appeals from a custody decree. **AFFIRMED.**

John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant

Benjamin J. Folladori of Marberry Law Fm, P.C., Urbandale, for appellee.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

Sierra Winters appeals from a custody decree establishing legal custody and physical care of her children with Robert Stanley. Sierra challenges the district court's decision to place physical care with Robert. We affirm, finding that placement with Robert is in the children's best interests.

## I.    Background Facts & Proceedings

Sierra and Robert are the never-married parents of two children: one born in 2014 and one born in 2016. They were in a relationship from roughly 2012 to 2015 and lived in Arizona during that time. They separated shortly before their younger child was born.

Robert now resides in Illinois with his wife and nine-year-old stepdaughter. He attends community college and studies exercise science, with the goal of converting his current part-time fitness work into a full-time position after graduation.

Sierra resides in Iowa, approximately eight hours away from Robert. At the time of trial, Sierra was going through a divorce from her husband. Sierra has been diagnosed with several psychiatric conditions, including depression, anxiety, post-traumatic stress disorder, and bipolar disorder. She attends therapy and takes medication for these conditions. Sierra works in pet-care sales, earning an hourly wage with potential for commissions.

The older child has had some educational difficulties and benefits from an emotional support animal and therapy. The younger child also attends therapy following sexual abuse perpetrated by Sierra's fiancé's teenage son.

Sierra historically served as the children's primary caretaker. After she and Robert separated, Sierra moved to Iowa without notifying Robert. Sierra was "quite controlling" in limiting Robert's visitation and frequently imposed arbitrary terms and conditions on his access to the children. As the district court put it, "By all accounts and testimony, Sierra did not behave in the manner of a joint custody parent with physical care." This behavior included Sierra refusing to share basic information with Robert, saying she would only share information if ordered to do so by the court. Sierra told Robert he did not have "a right to any information regarding the kids," and she would also sometimes refuse to respond to phone calls and text messages.

One area in which Sierra willfully withheld information from Robert concerned the sexual abuse of the younger child by Sierra's fiancé's son. Sierra allowed the teenage abuser to supervise and babysit the children on a number of occasions. She did not share any information with Robert concerning the sexual abuse until compelled to do so through discovery in this case. Sierra also failed to disclose that the children were attending therapy, both related to the trauma of sexual abuse and for other reasons (including statements relating to self-harm). She admitted to withholding this information because she thought it would reflect poorly on her as a parent and be used against her in court. Despite this, Sierra posted about the sexual abuse on Facebook when she thought it was to her or her fiancé's benefit.

Sierra told the children that Robert was "trying to take them away from" her, and she retaliated against Robert for initiating these proceedings. On one occasion, she would not allow the children to travel with their clothes and personal

belongings in a bid to force Robert to make extra purchases. On another, Sierra told Robert that she would not allow him to see the children at all until the court made a decision. On still another occasion, Sierra repeatedly threatened to "file harassment charges" when Robert made inquiries about the children's medical care. For his part, there is no indication Robert ever spoke negatively about Sierra to her or in front of the children.

At trial, Sierra expressed some regret over her conduct toward Robert and the children. The district court expressly found that the explanations Sierra offered for her behavior were not credible. Based in part on these credibility findings, the district court placed physical care with Robert, ordered joint legal custody, established a visitation schedule, and ordered the payment of child support. The district court found Robert's home more stable than Sierra's. In particular the court contrasted Sierra's more transient lifestyle (over the last four years, Sierra lived in six different places and worked eight different jobs, placing the children in at least three different school districts) with Robert's stability and experience working with special-needs children. The court also noted the children appeared to thrive in Robert's care, which it posited may be due to the social influence of Robert's stepdaughter in the home.

Sierra appeals.[1]

## II.     Discussion

On appeal, Sierra argues that physical care should have been awarded to her rather than Robert.

---

[1] Robert waived filing a brief on appeal. *See* Iowa R. App. P. 6.903(3).

We review this claim de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). We give weight to the district court's fact findings, especially on credibility, given its exclusive ability "to listen to and observe the parties and witnesses." *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010).

Although this action is governed by Iowa Code chapter 600B (2021), we look to section 598.41 to determine physical care. *See* Iowa Code § 600B.40(1) (providing "section 598.41 shall apply" to chapter 600B proceedings). In section 598.41, the General Assembly set forth a series of nonexclusive factors to guide our consideration. Our case law sets forth similar factors. *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Our overriding consideration "is the best interests of the child." Iowa R. App. P. 6.904(3)(o).

While we afford weight to the parent who historically acted as the primary caregiver, this factor is not dispositive. *See Flick v. Stoneburner*, No. 15-1930, 2016 WL 2743449, at *2 (Iowa Ct. App. May 11, 2016). It is undisputed that Sierra was historically the primary caregiver. But we also agree with the district court that this was in part a consequence of Sierra's conduct, including her moving away from Robert (to Iowa) without any notice and restricting his access to the children. Given the facts of this case, Sierra's historical role does not outweigh other considerations.

Like the district court, we find that Robert provides a more stable home environment for the children and credit his work with special-needs children as part

of the reason why the children thrive in his care. *See Winter*, 223 N.W.2d at 166 (considering "[t]he nature of each proposed environment, including its stability and wholesomeness").

We also share the district court's deep concern about Sierra's unwillingness to co-parent, her refusal to communicate with Robert, and her attempts to poison the children against him. We put particular emphasis on Sierra's failure to disclose the sexual abuse and her rationale for withholding the information. The district court put things mildly when it observed, "This is an admission that does not reflect favorably upon [Sierra] as a parent." Withholding this information left Robert in the dark about the child's behavior, allowing him only in hindsight to realize that the child "wandering around the house" late at night may have been connected to a serious traumatic event. We believe Sierra's selfish motivations regarding this issue are emblematic of her broader behavior toward Robert, which convinces us she would continue to disparage Robert and undermine his relationship with the children if they remained in her physical care. Robert, on the other hand, has been supportive of Sierra in front of the children and will facilitate her relationship with the children in the future.

Like at trial, much of Sierra's brief on appeal is spent offering excuses or justifications for her behavior. We ordinarily defer to the district court's credibility findings, and we do so here with regard to its finding that her trial testimony in this vein was not credible. Even if we were not required to give deference, we would come to the same conclusion. Sierra has not demonstrated any insight into how her conduct toward Robert undermined his relationship with the children and likely caused harm within the family unit. We reject Sierra's contention on appeal "that

she will encourage the relationship between Robert and the children," as she has spent years doing the opposite.

**AFFIRMED.**