# IN THE COURT OF APPEALS OF IOWA

No. 24-2017
Filed October 29, 2025


IN RE THE MARRIAGE OF TANNER DEREK NALL
AND SARA CHRISTINE NALL

Upon the Petition of
TANNER DEREK NALL,
        Petitioner-Appellee,

And Concerning
SARA CHRISTINE NALL n/k/a SARA CHRISTINE DELA CRUZ,
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Wayne County,
Elisabeth Reynoldson, Judge.


        A self-represented mother appeals a decree placing physical care of two
children with their father.  **AFFIRMED.**


        Sara dela Cruz, Norwalk, self-represented appellant.

        Tanner Derek Nall, Lineville, self-represented appellee.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**BULLER, Judge.**

Sara dela Cruz appeals from a divorce decree placing physical care of two children with her ex-husband Tanner Nall. Sara represents herself on appeal, and we consider her claims as best we understand them. We affirm because we agree with the district court on the preserved claim and discern no error.

## I.    Background Facts and Proceedings.

Tanner and Sara married in 2014 and separated in 2023. They have two children: a child Tanner adopted (born in 2011) and a shared biological child (born in 2015). Each parent acted as primary caregiver at times during the marriage.

Both parents have some mental-health struggles, sharing diagnoses of anxiety and attention deficit hyperactivity disorder (ADHD). Tanner also struggles with chronic pain from a past injury and uses medical marijuana; the district court made a credibility finding that Tanner only uses marijuana in compliance with his medical-marijuana card. Sara has been diagnosed with bipolar disorder, for which she takes a prescription medication.

Neither Tanner nor Sara's behavior has been ideal. Tanner was charged with domestically abusing Sara in December 2023, leading to a temporary no-contact order. He pled guilty to an amended charge of disorderly conduct, and the no-contact order was not extended (though the parties apparently thought it was). Also, in 2024, Tanner attempted to grow psychedelic mushrooms in his bedroom closet[1] and police found another controlled-substance pill during a

---

[1] The parties disputed Sara's involvement with the mushrooms. Tanner testified that Sara paid for them. She denied this. We think the mushrooms incident is collateral at best, and it does not inform our review.

search; he was convicted of two counts of possessing controlled substances. In 2023, one of the children's coaches reported that Sara appeared to be "strung out" or under the influence of drugs at a wrestling practice. Sara also, contrary to the instructions of the county sheriff, broke into the family home after the separation to retrieve Ellie, a golden retriever[2]—Sara broke a window in the process, and she pled guilty to criminal mischief and paid Tanner restitution. Sara also repeatedly refused to drug test in relation to a child-abuse investigation, which the district court characterized as "at best, suspicious."

Tanner continues to reside in the marital home in Lineville, while Sara moved to an apartment in Norwalk. Both parents work stable jobs. Tanner's parents, sister, and extended family live close by and help with childcare—which they also did while the parties were married. At the time of separation, Sara agreed to let the children stay with Tanner and at least finish the school year. By the time of trial, Sara requested physical care for herself and visitation for Tanner, while Tanner requested physical care and visitation for Sara.

Both children were doing well as of trial and receiving appropriate mental-health services. Tanner testified that he tried to support the children's relationship with Sara, but she did not do the same—evidenced by one of the children sometimes "yelling about adult things, like finances and stuff like that that he shouldn't have been made aware of." Tanner believed the marital strife, and in particular statements by Sara to one of the children, had affected the children's grades. Tanner's mother—who even Sara spoke of glowingly—agreed the divorce

---

[2] Although not at issue on appeal, we note the district court decreed Sara receive Ellie while Tanner received two other dogs whose names are not in our record.

had been hard on the kids and said she worked hard to involve Sara by encouraging the kids to call, taking the kids shopping with her, and inviting Sara to join when she took the children to a nearby swimming pool.

The district court found that, when Tanner was the primary caregiver in the year leading up to trial, he "show[ed] an ability and willingness to promote the relationship between the children and Sara and to provide a stable, supportive, loving home, which is crucial to their growth into productive adults." The court also found that placement with Tanner had allowed the children to remain in the school and home they had known most of their lives and stay close to "grandparents and extended family with whom they have a deep and supportive relationship." And the court found that the parties had largely "successfully navigated the stress of a pending divorce and custody dispute while keeping their children's best interest as the guiding light."

Sara argued there was a history of domestic abuse that should create a rebuttable presumption against joint custody. *See* Iowa Code § 598.41(1)(b) (2024). But the district court found the evidence did "not support that conclusion." Specifically, the district court found that two incidents of domestic violence occurred over the course of the decade-long marriage. In the first, the court found both parties engaged in mutual aggression. And in the second, the court weighed "the parties' testimony" and "conclude[d] that both parties engaged in fighting behavior that resulted in both of them suffering minor injuries." The court found it was unable to determine a primary aggressor for either incident, and therefore found there was no history of domestic abuse for purposes of the statutory presumption.

The district court decreed joint legal custody and placed physical care of the children with Tanner. Sara appeals pro se. As we understand her brief, she challenges whether placing physical care with Tanner was in the children's best interests, whether the district court made "specific, detailed" findings, and whether the court was biased in favor of Tanner.

## II. Standard of Review

Actions involving the dissolution of marriage are in equity, and our review is de novo." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "[W]e examine the entire record and adjudicate anew" the issues presented. *Id.* "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Id.*

## III. Discussion[3]

"The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Iowa Code section 598.41 sets forth a series of nonexclusive factors to guide our consideration of child custody. Our case law sets forth similar additional factors. *See In re Marriage of Winter*, 223 N.W.2d 165, 166–67

---

[3] Sara's brief includes a variety of outside-the-record information, which we do not consider. *See* Iowa R. App. P. 6.801 (defining the record on appeal). We considered striking her brief for failure to comply with the rules, but given that Sara is self-represented and Tanner did not file an appellee's brief, judicial economy and the need to provide final resolution of the physical-care question for the children weighed in favor of us deciding the appeal expeditiously while disregarding the improper information.

(Iowa 1974). Our overriding consideration "is the best interests of the child." Iowa R. App. P. 6.904(3)(n).

As to Sara's first contention that physical care should have been placed with her, we find that her appellate brief is largely an airing of personal grievances related to Tanner, complaints about the Iowa Department of Health and Human Services, and an attempt to relitigate the district court's credibility findings. To the extent there is a viable best-interests claim before us, we affirm the district court. We agree that placing physical care with Tanner largely approximates the caregiving situation of the recent past and will allow the children stability and the maximum opportunity for physical and emotional health. We also agree placement with Tanner helps facilitate contact with the grandparents and extended family, continued residence in the family home, and continuation of the current school system. While Sara is also a suitable custodian, these facts tilted the scales toward Tanner.

As for Sara's second claim, she asserts the district court "fail[ed] to enter specific, detailed findings supporting its child custody determination." We aren't entirely sure what this claim asserts, as the body text under that heading is just disagreement with the court's domestic-violence conclusion. We doubt error was preserved on any claim regarding the specificity of the district court's fact-findings. But even if it were, the district court wrote a detailed ruling including credibility findings, and we observe no basis to substitute our own judgment for that of the district court. For the same reason, we reject any attempt to relitigate the credibility findings underlying the domestic-violence determination.

Last, Sara claims "the trial court showed bias towards [Tanner] when determining the primary custodial parent." She asserts some kind of conspiracy between the county attorney, Tanner's family, and the court system in this case and various other court cases. Sara did not preserve error on any claim regarding judicial bias. And even if she had, we discern no bias by the district court in our careful review of this case.

**AFFIRMED.**