# IN THE COURT OF APPEALS OF IOWA

No. 25-0354
Filed December 3, 2025

IN RE THE MARRIAGE OF KATRINA L. HAMMERMEISTER
AND SHANNON A. HAMMERMEISTER

Upon the Petition of
KATRINA L. HAMMERMEISTER,
        Petitioner-Appellant,

And Concerning
SHANNON A. HAMMERMEISTER,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Harrison County, Justin R. Wyatt,

Judge.


        A wife appeals the provisions of a dissolution decree placing legal custody

and physical care of the parties' two minor children with the father.  **AFFIRMED.**


        J. Joseph Narmi, Council Bluffs, for appellant.

        Norman L. Springer Jr. of McGinn & McCann, P.L.C., Council Bluffs, for

appellee.


        Considered without oral argument by Ahlers, P.J., and Chicchelly and

Sandy, JJ.

**SANDY, Judge.**

Katrina Hammermeister appeals the district court's order placing legal custody and physical care of her two minor children with their father, Shannon Hammermeister. On appeal, Katrina contends that the district court erred by not granting her request to award joint legal custody and joint physical care of the children.[1] Additionally, Shannon requests appellate attorney fees.

After reviewing the record before us, we affirm the district court's order awarding Shannon sole legal custody and physical care of the children. We conclude that joint legal custody and joint physical care is not in the children's best interests given Katrina's instability. We deny Shannon's request for appellate attorney fees.

### I. Background Facts & Procedural Posture.

Katrina and Shannon married on January 11, 2011, and have two children, Z.A.H. (born in 2015) and C.R.H. (born in 2017). Twelve and a half years later, Katrina filed a petition to dissolve the marriage. At the time of trial in September and November 2024, legal custody and physical care of the children was a contested issue. Katrina resided in Douglas County, Nebraska; Shannon resided in Harrison County, Iowa.

During the pendency of this dissolution case, the family was also involved in parallel child-welfare proceedings with the Iowa Department of Health and

---

[1] Katrina additionally recites her trial argument that "she provided evidence that child support should have . . . been calculated with Katrina making no money, or a calculation based off of disability," but provides no further argument or legal authority supporting this issue. To the extent Katrina challenges the court's child support determination, we deem the issue waived. *See* Iowa R. of App. P. 6.903(2)(a)(8)(3).

Human Services. That matter stemmed from a January 28, 2023, incident in which police responded when police responded to a reported domestic dispute at the home. Katrina was arrested for domestic abuse; a no-contact order issued; and C.R.H., then age six, reportedly witnessed Katrina strangle Shannon with a necklace, causing bleeding. Police returned on January 31, 2023, after another reported altercation; Katrina was arrested for violating the no-contact order. A child protective assessment found a denial of critical care and failure to provide adequate supervision on the part of both parents.

The department reported a history of domestic violence in the home spanning several years. Following implementation of a safety plan with in-home supervision by informal supports, the juvenile court adjudicated Z.A.H. and C.R.H. as children in need of assistance in March 22. In April, another altercation occurred in the home involving alcohol; Shannon called 911 and later denied doing so, leading to multiple charges, including interference causing bodily injury and assault on persons in certain occupations. Later that month, the children were removed by ex parte order and placed with their paternal half-brother; older half-siblings were placed with their mother.

Visitation for both parents fluctuated. Katrina's time progressed to semi-supervised and overnight visits before reverting to fully supervised after a December 2023 incident involving her boyfriend's unapproved presence and late-night behavioral issues with the children. Meanwhile, providers reported ongoing concerns with Katrina's explosiveness and boundary-setting. Shannon's visitation temporarily reverted to fully supervised after an October 2023 positive hair-stat test

for methamphetamine, which he disputed; a later November screen was negative, and his time progressed thereafter.

During early 2024, Katrina's visits were professionally supervised; efforts to use informal supports were discontinued due to noncompliance, which culminated in a March 2024 incident at a school with a therapy provider that required police assistance. The department documented Katrina's ongoing difficulties with case professionals, including argumentative communications, refusal to accept feedback, and limited progress on impulse control and safe relationship skills. By July, Katrina's visits remained fully supervised at four hours weekly due to concerns about her ability to manage and redirect the children's behaviors.

At a permanency review in October, the juvenile court found Katrina lived in an Omaha townhouse that was approved in August via the Interstate Compact on the Placement of Children; she had a valid driver's license and reliable transportation. Shannon remained employed full time and utilized informal supports for transportation; he held a restricted license through February 14, 2026, allowing work and child-related driving. On October 28, 2024, the juvenile court ordered that care, custody, and control of the children return to Shannon, subject to department supervision.

The dissolution trial occurred on September 20 and November 8, 2024. The court heard testimony from both parties and multiple witnesses. Katrina proposed joint legal custody and joint physical care, stating joint legal custody would be appropriate if she made medical decisions in consultation with Shannon. Shannon sought sole legal custody and physical care, citing high conflict, Katrina's need for control, and difficulties accessing medications and health records. Katrina denied

blocking access to health records and asserted Shannon needed to establish his own portal.

Both parties had recent criminal matters. Shannon faced false-reporting, assault, operating-while-intoxicated, and driving-while-revoked charges; served a jail sentence in Harrison County; and had his driver's license suspended before obtaining a temporary restricted license. He was no longer on probation at trial. Katrina faced a theft charge in Nebraska and was participating in the Mental Health Diversion program, which could lead to dismissal after twelve months.

Regarding the children's daily needs, the court found both parents historically attended school conferences, and Katrina generally took the children to more medical appointments due to Shannon's work schedule. At the time of trial, Shannon maintained the marital home, and the children had been returned to his care; Katrina's visitation remained fully supervised by Family Centered Services.

As to financial matters, Katrina had worked a series of full-time positions, most recently at $23 per hour until August 2024, when she ceased work due to surgeries; she testified she was applying for disability. She maintained health insurance for the children through her employment and intended to keep it active. Shannon worked at $30 per hour with gross monthly income of $5,100 and did not have affordable dependent health insurance available through his employer.

Following trial, the district court concluded that joint physical care was not in the children's best interests, finding Katrina had not demonstrated the ability to safely parent to the degree necessary for reunification during nearly two years of

services, while Shannon had shown sufficient progress and provided greater stability. The court placed physical care of the children with Shannon.

On legal custody, the court determined there was clear and convincing evidence that joint legal custody was unreasonable and not in the children's best interests, citing the parents' inability to agree on routine issues, Katrina's controlling behavior, her escalation of disagreements including an incident requiring law enforcement at the children's school, and persistent communication barriers. The court awarded Shannon sole legal custody.

The court also set child support and incorporated property and debt allocations (including prior stipulations); those issues are not material to the custody determinations on appeal. There are two issues before us: whether the district court erred in granting sole legal custody and physical care of the minor children to Shannon and whether Shannon is entitled to appellate attorney fees.

## II. Standard of Review.

"Dissolution-of-marriage actions are reviewed de novo." *In re Marriage of Towne*, 966 N.W.2d 668, 674 (Iowa 2021). Similarly, "[w]e review physical-care determinations de novo." *Randall v. Trier*, 15 N.W.3d 809, 813 (Iowa Ct. App. 2024). Although we are not bound by the district court's findings, we give them weight, especially concerning witness credibility. *Towne*, 966 N.W.2d at 674; Iowa R. App. P. 6.904(3)(g). We are only to disturb the district court's ruling when the ruling fails to do equity. *Towne*, 966 N.W.2d at 674.

**III. Analysis.**

**A. Legal & Physical Care**

We address the legal-custody and physical-care arguments together given their interconnectedness in this case. In dissolving a marriage with minor children, the district court must assign sole or joint legal custody. *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009). "Legal custody" grants the parent (or parents) certain rights and responsibilities, including but not limited to "decision making affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.1(5); *see also Gensley*, 777 N.W.2d at 714. The child's best interests are the primary consideration. Iowa R. App. P. 6.904(3)(n). The Iowa Code and our case law set forth a lengthy list of non-exclusive factors to guide custody decisions. Iowa Code § 598.41(3); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (listing often-overlapping considerations for evaluating legal custody and physical care).

The child's best interests are also the primary focus when it comes to the question of physical care. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Physical-care determinations are not resolved based upon the perceived fairness to the parents involved. *Id*. Ultimately, the objective of a physical-care determination is to put the children in the environment most likely to bring them to physical and mental health, and to social maturity. *Id*. The Iowa Supreme Court has set out a list of non-exclusive factors to be considered in determining whether joint physical care is in the best interest of the child. *Id*. at 696–99. We are to consider whether one parent was the primary caregiver, the parents' ability to communicate and show mutual respect, the degree of conflict between the

parents, and the degree the parents are in general agreement about their approach to daily matters. *Id*. No single factor is determinative. *Id*.

In determining physical care, the district court must also consider "[w]hether a history of domestic abuse . . . exists." Iowa Code § 598.41(3)(j). The court must weigh the surrounding facts and circumstances, including whether a petition for relief was filed, whether a protective order was entered, the response of peace officers to the scene of any alleged abuse, and whether an arrest or conviction resulted. *Id.* "[I]f the court finds that a history of domestic abuse exists, a rebuttable presumption against the awarding of joint custody exists." *Id.* § 598.41(1)(b).

Here, the district court did not explicitly find that a history of domestic abuse existed in analyzing § 598.41(3)(j), but it did consider that history relevant. As described in detail above, the amount of conflict between the parties was—as the district court aptly put it—"exceptionally high." Both parties share the blame when it comes to this issue. Numerous domestic incidents occurred in the home necessitating law enforcement interventions. This not only disrupted the parties' ability to communicate but also foreshadows the disaster that a joint physical care arrangement would create. The record is replete with evidence that the acrimony between these parties goes well beyond the normal discord attendant to separating couples. We find Katrina's behavior during pendency of the parties' separation demonstrates she cannot co-parent. And we find much of her appellate argument on this point belied by the record. We agree with the district court that a joint physical care arrangement is not in the children's best interests and that placing physical care with Shannon is in their best interests.

It is also worth highlighting the most obvious obstacle to Katrina's requests, that—at the time of trial—she still had not transitioned to unsupervised visits with the children. For over one year both parties have had numerous services provided to them through the juvenile court. During that time Katrina struggled to demonstrate an ability to safely parent the children to the degree the children could not be returned to her care. Shannon on the other hand—while not perfect—had progressed to the point the children were returned to his care.

A parent seeking sole legal custody must provide clear and convincing evidence that joint legal custody is unreasonable and not in the child's best interest, to the extent that the legal relationship between the other parent and child should be severed. *Id.* § 508.41(2)(b). In all decisions regarding a child's legal custody and physical care, the court's polestar is the child's best interest. The district court wisely reasoned:

> There is little to no evidence that Shannon and Katrina can agree upon routine school or medical issues that would arise. Katrina has exhibited a history of controlling behavior and an inability to compromise regarding routine issues. She routinely escalates disagreements to the detriment of the children, once requiring law enforcement intervention at the children's school. The court concludes that there is clear and convincing evidence that Shannon Hammermeister should be awarded sole legal custody of Z.A.H. and C.R.H. There is no evidence that placing the child in the shared legal custody of the parties is in the children's best interests. Katrina has not shown an ability to put the children's needs before her own, or cooperate with anyone in the best interests of the children. Allowing her to make joint decisions about the children's medical care or education is not in the children's best interests. Shannon is capable of bringing the children to physical and emotional maturity.

We take the district court's credibility determinations seriously and give great deference to it "because the district court had a front-row seat to the live testimony, whereas we are limited to a cold record." *Higdon v. Rana*, No. 23-1107, 2024 WL

4370048, at \*7 (Iowa Ct. App. Oct. 2, 2024).  Like the district court, we agree that clear and convincing evidence exists that Shannon Hammermeister should be awarded sole legal custody of Z.A.H. and C.R.H.

### B.  Appellate Attorney Fees

"Appellate attorney fees are awarded upon our discretion and are not a matter of right."  *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020). When considering whether to award appellate attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."  *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013).  Given Katrina's meager earnings, we deny Shannon's request for appellate attorney fees.

**AFFIRMED.**