# IN THE COURT OF APPEALS OF IOWA

No. 23-0109
Filed January 24, 2024

IN RE THE MARRIAGE OF JOSEPH THOMAS GAST
AND SHANNON MARY-CHYENNE SULLIVAN

Upon the Petition of
JOSEPH THOMAS GAST,
    Petitioner-Appellant,

And Concerning
SHANNON MARY-CHYENNE SULLIVAN,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

A father appeals from the decree dissolving the parties' marriage, granting physical care of their daughter to her mother, and ordering him to pay rehabilitative spousal support and attorney fees. **AFFIRMED**.

Joseph Thomas Gast, Dubuque, self-represented appellant.

Dustin A. Baker, Dubuque, for appellee.

Considered by Bower, C.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Joseph Gast appeals the decree dissolving his marriage with Shannon Sullivan. Gast argues that the district judge should have recused herself because of comments she made at the beginning of the trial. He also challenges the physical-care, spousal-support, and attorney-fee awards to Sullivan. And Gast contends that the district court's relinquishment of continuing jurisdiction over future child-custody disputes violates his constitutional due-process rights.

On our de novo review, giving the district court's decisions the deference we must, we cannot say the physical-care or spousal-support awards fail to do equity. The court's award of attorney fees was not an abuse of discretion. We also decline to award appellate attorney fees and costs. And Gast failed to preserve error on his due-process or recusal issues because he did not first raise them before the district court. Therefore, we affirm the district court.

I.      **Background Facts and Proceedings**

Joseph Gast and Shannon Sullivan met early in 2014 through their service in the United States Air Force. They married in June 2014 in Colorado. And the next year, their daughter was born. The family moved around a lot—living in Colorado, California (twice), and Texas before landing in Dubuque in October 2020. But they spent the longest time living with Sullivan's mother in California over two stints totaling about four years. They moved to Dubuque for Gast's job and otherwise have little connection to the community.

Since their daughter was born, Sullivan has been her primary caregiver. The parties initially agreed that she should be a stay-at-home mom. While there is some dispute as to how long this consensus continued, it is uncontested that,

aside from some online gaming ventures, she has not had outside employment until after they separated. At the time of trial, she was working remotely from home as a financial assistant and earning around $39,000 per year. Gast was the primary earner throughout the marriage. And at trial, he was earning roughly $77,000 annually as a network engineer.

Sullivan's remote employment offers her the flexibility to continue to care for their daughter while working. At the time of trial, she had decided to move to California to live with her mother—as the parties had earlier in their marriage. She expected to continue her remote employment while also pursuing her education to ultimately obtain a bachelor's degree in software engineering. Sullivan has access to an educational fund to help pay for the expenses of her education.

Throughout their marriage, Gast demonstrated issues managing anger that resulted in physical and verbal abuse toward his family. This included instances where he smashed cell phones and computer screens, engaged in verbally violent behavior, and physically abused Sullivan on four or five occasions—sometimes in front of their daughter. Sullivan called the police during one incident in Texas, resulting in Gast's arrest for assault. Police also confiscated marijuana from the home at the time of the arrest.

Indeed, Gast has a long history of drug use. He had a medical marijuana card in California. But he has continued to use marijuana—along with psilocybin mushrooms and sometimes cocaine—despite his conduct being illegal in Iowa. And he would sometimes be under the influence in front of their daughter.

In September 2021, Gast filed this dissolution proceeding. Four months later, he was charged with two felony controlled-substance violations for allegedly

receiving sizable quantities of marijuana, psilocybin mushrooms, THC vape pens, and THC gummies with the intent to sell or give to other individuals to sell. Sullivan tipped off the police to Gast's activities. And because of threats Gast made to her after his arrest, Sullivan requested—and after a hearing, the district court issued with Gast's consent—a civil protective order against Gast. Around the same time, the court also granted temporary physical care of their daughter to Sullivan but ordered Sullivan not to move permanently to California.

Following a two-day bench trial in November 2022, the district court issued a dissolution decree. The court granted the parties joint legal custody of their daughter and placed her in Sullivan's physical care with "fair and liberal" visitation for Gast. Recognizing that Sullivan and their daughter would be moving to California to live with Sullivan's mother and the parties' passing connection to Iowa, the court declined to exercise continuing jurisdiction over child-custody disputes.

The district court also awarded Sullivan rehabilitative spousal support, ordering Gast to pay $750 per month for two years while Sullivan worked to complete a bachelor's degree in software engineering. And the district court eventually awarded Sullivan $7500 of her total $16,600 requested trial attorney fees. Gast now appeals.[1]

---

[1] While the appeal was pending, Gast filed a motion seeking an injunction prohibiting Sullivan from moving from California and arguing for a modification of the physical-care provision based on new evidence not presented to the district court. We denied the motion and do not consider the evidence submitted in deciding the merits of this appeal because it is not a part of the record before the district court. *See* Iowa R. App. P. 6.801. A request to modify the decree based on a substantial and material change in circumstances since the entry of the decree must be made first to the district court. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (describing requirements for petition to modify the decree).

## II.     Preservation of Error on Recusal and Due Process Issues

Before we can consider a claim of error on appeal, a party must first preserve the error by raising it in the district court.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).  This gives the district court a chance to correct the error itself "at a time when corrective action can be taken."  *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up).  And it ensures that we are acting as a court *of appeals*, reviewing a decision that has been made by the district court rather than considering it for the first time on appeal.  *See Meier*, 641 N.W.2d at 537.  This preservation-of-error requirement applies even to dissolution proceedings that we review de novo.  *See In re Marriage of Huston*, 263 N.W.2d 697, 699–700 (Iowa 1978); *see also In re Marriage of Ricklefs*, 726 N.W.2d 359, 363 (Iowa 2007) (refusing to consider merits of recusal issue in dissolution modification proceeding when error was not preserved in the district court).

With this in mind, we cannot consider two issues that Gast raises for the first time on appeal.  He contends that the district judge should have recused herself.  But Gast did not move for recusal of the judge or otherwise bring the issue to the district court's attention.  He also argues that the district court's decision that it would not have continuing jurisdiction over future child-custody disputes because of Sullivan's move to California, *see* Iowa Code § 598B.202(1)(a) (2021), violates his due-process rights.  Again, we have scrutinized the record and have been unable to find any way in which he raised this issue before or after the district court's ruling.  And Gast's brief does not point to how he preserved error on either issue.  *See* Iowa R. App. P. 6.903(2)(g) (requiring appellant's brief to include for each issue "[a] statement addressing how the issue was preserved for appellate

review, with references to the places in the record where the issue was raised and decided"). Gast thus failed to preserve error, and we will not address the merits of either of these arguments.

### III. Physical Care

We review the district court's decision on physical-care placement de novo. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). But a district court "is greatly helped in making a wise decision about the parties by listening to them and watching them in person," while we are limited to the cold, printed record and thus "denied the impression created by the demeanor of each and every witness." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (cleaned up). So we give weight to a district court's fact findings—especially those based on credibility determinations—even though they are not binding on us. *See id.*; Iowa R. App. P. 6.904(3)(g).

Our overriding consideration in physical-care decisions is the best interest of the child. *In re Marriage of Brainard*, 523 N.W.2d 611, 614 (Iowa Ct. App. 1994). The factors in Iowa Code section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), guide us in discerning the best interest. *See Fennelly*, 737 N.W.2d at 101. And our goal "is to place the child[] in the environment most likely to bring [her] to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

In the district court, Gast and Sullivan painted two starkly different portraits of each other. According to Gast and his witnesses, he is the more stable provider and nurturing caretaker, while Sullivan struggles with mental-health issues, maintaining employment, and managing her finances and the household. But

Sullivan and her witnesses describe Gast as physically and verbally abusive, more focused on his career and other interests—including using and distributing drugs—than caring for their daughter. And they present Sullivan as the consistent presence and caregiver for their daughter, managing her educational, extracurricular, and medical care.

The district court found Sullivan's evidence more credible and placed their daughter in her physical care. On appeal, Gast mainly continues to argue that we should find his version of the facts more believable. But we defer to the district court's factual findings based on witnesses' credibility because of that court's inherent advantages in making credibility determinations. And on our de novo review, we find that they are supported—not just from the testimony of witnesses but also by other corroborating evidence, like the issuance of a civil domestic-abuse protective order, his pending drug charges, and the confiscation of marijuana during his Texas arrest.

We also agree that granting physical care to Sullivan is in their daughter's best interest. This placement maintains a stable connection between the child and her primary caregiver. *See In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003); *see also* Iowa Code § 598.41(3)(d). It avoids potential negative influences on their daughter's development from Gast's drug use, anger, and violence. *See* Iowa Code § 598.41(3)(i) (factoring in the "safety of the child"); *id.* § 598.41(3)(j) (requiring consideration of "a history of domestic abuse," including the issuance of a civil domestic abuse protective order). And Sullivan has shown that she has a viable plan to offer a stable home with the support from her mother and other family, her flexible remote employment, and her longer-term educational

endeavors. *See Winter*, 223 N.W.2d at 166 (factoring in the nature of the proposed environment and the parents' capacities to provide for the child's material needs).

Therefore, we affirm the district court's physical-care decision.[2]  But we caution that their daughter deserves a continued relationship with both her parents. Because Sullivan has physical care, she must strive to foster those connections and not deny them.  *See* Iowa Code § 598.41(1)(c) ("The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement."); *In re Marriage of Quirk–Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) (holding that parent's attempt to limit child's contact with other parent was a compelling reason to place child with the other parent).

## IV.    Spousal Support

As with the physical-care decision, we review a district court's spousal-support decision de novo.  *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023).  But we defer to the district court's "important, but often conjectural, judgment calls" and must not engage in "undue tinkering" with the award on appeal. *Id.* at 182–83 (cleaned up).  And so, we will not disturb it unless "there has been a failure to do equity." *Id.* at 182 (cleaned up).

"Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *Id.* at 185 (quoting *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022)).  In deciding an equitable

---

[2] Because we reach this decision without relying on Gast's text messages to third parties that were photographed by Sullivan or Sullivan's journals, we need not decide whether Gast preserved error for the evidentiary arguments he now makes on appeal or the merits of those challenges.

spousal-support award, a court must consider the statutory factors set forth in Iowa Code section 598.21A(1). *See id.*

The district court awarded Sullivan only one of the four forms of spousal support recognized by our supreme court: rehabilitative spousal support. *See id.* at 185–86. "Rehabilitative spousal support is a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting." *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008) (cleaned up). Such support is inappropriate "[w]ithout a showing that the recipient spouse seeks reeducation, retraining, or some discrete period of time to increase earning capacity to become self-supporting." *Sokol*, 985 N.W.2d at 186. The duration of rehabilitative spousal support should be driven by "the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouses." *Id.* (cleaned up).

Consistent with these parameters, the district court ordered Gast to pay Sullivan $750 per month for two years—$18,000 in total—to support her while she pursues a bachelor's degree in software engineering. Gast contends that evidence before the district court was too speculative on Sullivan's financial need and her likelihood of actually pursuing a degree. But the court found that her income was about half of Gast's, that she plans to finish her schooling, and that she has a need for assistance. We defer to these factual findings and see no basis in the record to come to a contrary conclusion.

True, Sullivan also has access to a fund to assist in paying for her educational expenses. But given her limited income, we cannot say it is

inappropriate to give her some additional economic support as she completes her education to grow her longer-term earning capacity. Indeed, if she did not have access to the educational fund, an award greater than $18,000 would likely have been needed to support her. The district court's award of rehabilitative spousal support for two years is equitable.

## V.      Trial and Appellate Attorney Fees and Appellate Costs

We review a district court's award of attorney fees in a dissolution proceeding for abuse of discretion. *See In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003). Neither party has a right to attorney fees. *See id.* at 784. The main consideration in deciding whether to award fees is "the respective abilities of the parties to pay." *Id.* (cleaned up). We consider that same factor "and the relative merits of the appeal" in exercising our discretion to award appellate fees in dissolution cases. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (cleaned up)*.* And when one party is completely unsuccessful on appeal, they cannot be awarded appellate costs. *See* Iowa R. App. P. 6.1207; *Solland v. Second Injury Fund*, 786 N.W.2d 248, 249–50 (Iowa 2010) (holding that it is an abuse of discretion even to split appellate costs when one party is fully successful).

Gast argues that the district court should have awarded him his trial attorney fees rather than making him pay for $7500 of Sullivan's fees. He also seeks his appellate fees and costs. The district court did not abuse its discretion in awarding Sullivan $7500 of her trial attorney fees and declining to award Gast his fees. The court properly considered Gast's higher income and, recognizing that Sullivan did have *some* ability to pay, awarded her less than half of her requested $16,600 in fees.

We likewise decline to award appellate attorney fees or costs to Gast. Sullivan does not have a better ability to pay his fees, and he was unsuccessful in this appeal. Rather, appellate costs must be assessed *to* him. *See Solland*, 786 N.W.2d at 249–50.

**AFFIRMED.**