**IN THE COURT OF APPEALS OF IOWA**

No. 23-1080
Filed May 22, 2024

**MACY ALEXANDRA WORTH,**
    Plaintiff-Appellant,

**vs.**

**MATTHEW NOEL GEINITZ,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Dickinson County, Shayne Mayer,

Judge.

    A mother appeals the physical-care determination in this custody action.

**AFFIRMED.**

    Elizabeth Elsten of Johnson Law Firm, PC, Spirit Lake, for appellant.

    Kevin R. Sander of Fitzgibbons Law Firm, L.L.C., Estherville, for appellee.

    Heard by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

Macy Worth and Matthew Geinitz are the parents of two minor children. Macy and Matthew have never been married to each other. After their sixteen-year relationship ended, Macy filed this action to establish legal custody, physical care, visitation, and child support. Following a trial, the district court granted the parents joint legal custody of the children, placed physical care of the children with Matthew, granted Macy visitation, and ordered Macy to pay Matthew child support.

Macy appeals. She challenges only the district court's physical-care determination. She contends physical care of the parties' children should be placed with her. Alternatively, she argues joint physical care would be a better option than placing physical care with Matthew. For his part, Matthew asks us to affirm the order granting him physical care and requests appellate attorney fees.

I. **Physical Care**

Actions between unmarried parents regarding custody and visitation of their minor children are equitable proceedings, so our review is de novo. *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). With de novo review, "[w]e review the entire record and decide anew the factual and legal issues preserved and presented for review." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017)*.* Even with de novo review, we grant deference to the district court, which means we give weight to the district court's fact findings, and we will affirm "unless the district court failed to do substantial equity." *Id.* We are especially deferential to the district court's credibility determinations. *Thorpe v. Hostetler*, 949 N.W.2d 1, 5 (Iowa Ct. App. 2020).

As Macy and Matthew never married each other, Iowa Code chapter 600B (2021) governs this dispute over physical care of their children. We apply the same standards in chapter 600B actions to determine physical care as we do in dissolution-of-marriage actions. Iowa Code § 600B.40(2) (stating that Iowa Code section 598.41 also applies to chapter 600B actions). When making a physical-care determination, the children's best interests serve as our ultimate guideposts. *See Phillips*, 541 N.W.2d at 847. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We consider a myriad of factors when making a physical-care determination, including, but not limited to, the factors set out in Iowa Code section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165-67 (Iowa 1974). *Watson v. Ollendieck*, No. 22-1350, 2023 WL 3335602, at *3 (Iowa Ct. App. May 10, 2023).

At the outset, we address Macy's backup request that the children be placed in the joint physical care of the parties. We begin by recognizing that both parents are suitable caregivers. So our decision boils down to consideration of four key factors: (1) stability and continuity of caregiving (sometimes referred to as "approximation" of the historical caregiving arrangement); (2) the parents' ability to communicate with and show respect to each other; (3) the degree of conflict between the parents; and (4) the degree to which parents agree about their approach to day-to-day matters. *Id.* at *3–4. Here, the parents' level of animosity, conflict, and lack of respect for each other is to a degree that joint physical care is

not a practical option for this family. As a result, we must determine which parent should provide physical care for the children.

We reiterate that both parents are suitable caregivers. *See* Iowa Code § 598.41(3)(a). The record establishes that both parents have historically provided fundamental care for the children. Macy provided most of the day-to-day care for their older child's first two years as she stayed home and Matthew worked two jobs. Then Macy began working part time, and Matthew transitioned to one job full time. Eventually, the two settled into a routine whereby Matthew provided care for the children in the morning and Macy provided care in the afternoon and evenings. But when the parties split up, Macy left the familial home,[1] and the children remained there. An order on temporary matters placed the children in Matthew's physical care for roughly a year and a half before the custody trial. As a result, Matthew has served as the children's primary caregiver in recent years. *See id.* § 598.41(3)(d).

The children's maternal grandmother and great grandmother have provided the family with childcare since the children were born and continue to do so. The maternal grandmother testified that she found Matthew's home with the children to be less chaotic since Macy moved out and said she knows the children are happy there. The maternal great grandmother testified that both children want to stay in their father's care because "they feel secure and safe" with him while "[t]hey don't always feel safe with their mom." Macy challenges her mother's and grandmother's credibility and points to an affidavit she filed wherein she discusses

---

[1] Matthew owns the home. Macy is not listed on the title or the mortgage note.

her relationship with her relatives and what motives she believes her relatives have to paint her in a bad light. Yet the district court found both the grandmother's and great grandmother's testimony credible. We defer to those credibility findings and find the grandmother's and great grandmother's testimony to be insightful. *See Hansen*, 733 N.W.2d at 690 (acknowledging weight to be given credibility determinations).

Macy points to Matthew's volatile temperament and history of abuse to support her claim that he cannot provide a safe environment for the children. *See* Iowa Code § 598.41(3)(j). In support of her argument, she highlights audio recordings of Matthew berating her along with sounds she contends are consistent with him dragging her by her coat collar and striking her, an incident when Matthew locked her out of the home in the winter, and text messages wherein he called her vile terms like "dumb cow," "dumb whiney cunt," "selfish piece of shit," and "fucking psyco [sic]." To the extent Macy is arguing the rebuttable presumption established by Iowa Code section 598.41(1)(b) upon a finding of domestic abuse applies to the physical-care determination rather than the legal-custody determination, we find the presumption rebutted here. *See In re Marriage of Wieland*, No. 22-0541, 2022 WL 17826932, at *5 & n.6 (Iowa Ct. App. Dec. 21 2022) (discussing inconsistency in our caselaw as to whether the rebuttable presumption applies to physical-care determinations). We reach that conclusion in part because Macy admitted to perpetrating her own acts of domestic abuse on Matthew by slapping him and throwing a lit cigarette at him. In addition to each party being physically abusive to the other, each has also engaged in name-calling and making derogatory comments directed toward the other. As each party has been abusive toward the

other at times during the relationship, even if the rebuttable presumption established by section 598.41(1)(b) applied to this physical-care dispute, it does not advance either party's cause. Further, we note that the parties have somewhat improved their coparenting relationship since their romantic relationship ended, and nothing in the record raises an ongoing safety concern for the children.[2]

Macy argues that she is better suited to have physical care of the children because of her Saturday-through-Monday work schedule as opposed to Matthew's work schedule. But neither parents' work schedule lends itself to full-time parenting more than the other's in any significant way. Matthew works Tuesday through Saturday from the early afternoon to late in the evenings,[3] while Macy testified she works Friday through Monday 6:00 p.m. to 6:00 a.m.[4] If anything, Macy's overnight schedule is more challenging for a caregiver because it would require her to secure overnight childcare.

Macy also contends the district court did not properly credit her accomplishments in establishing herself as an independent person following the parties' split. We commend her for securing housing and obtaining her driver's license. Both are significant achievements and took effort by Macy. But our focus is not on commending the parties for bettering themselves; instead we focus on

---

[2] Macy testified that Matthew "is a good dad, a fun dad."

[3] Matthew testified he often works a noon to 9:00 p.m. shift or 3:00 p.m. to 10:30 shift.

[4] Macy noted that on Mondays she does "a fourteen hour" but did not clarify over what time of day she works those hours.

We note Macy's appellate brief states her work hours are 2:00 p.m. to 10:00 p.m. and cites to her testimony from the temporary matters hearing. However, we consider her testimony from the custody trial. Even if we did consider her prior testimony, her schedule would not have any more benefit to the children than Matthew's.

the best interests of the children. *See Hansen*, 733 N.W.2d at 695 ("Physical care issues are not to be resolved based upon perceived fairness to the [*parents*], but primarily upon what is best for the *child*."). Ultimately, we agree with the district court that the children's interests are best served by placing their physical care with Matthew given the fact that the children are doing well in his home and feel safe in his care, placement with him will provide the children with continuity of care, and it will cause the least disruption possible for the children.

## II.     Appellate Attorney Fees

We end by addressing Matthew's request for appellate attorney fees. Iowa Code section 600B.26 permits an award of attorney fees to the prevailing party in an action to determine custody or visitation under chapter 600B. The attorney fees permitted under section 600B.26 include appellate attorney fees. *Schneider v. Schneider*, No. 21-0124, 2021 WL 5467336, at *3 (Iowa Ct. App. Nov. 23, 2021). Appellate attorney fees are not awarded as a matter of right but may be awarded at our discretion to the prevailing party. *Id.* When considering a request for attorney fees, we weigh the needs of the prevailing party, the other party's ability to pay, and whether the party had to defend the district court's decision on appeal. *Id.* After weighing these factors, we determine an award of appellate attorney fees is not justified in this case.

**AFFIRMED.**