# IN THE COURT OF APPEALS OF IOWA

No. 24-0376
Filed October 30, 2024

**LOGAN WILLIAM BENSON,**
    Plaintiff-Appellant,

**vs.**

**STEVIE TAYLOR SULLENS,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Lee (South) County, John M. Wright,

Judge.


    A mother appeals the district court's order placing physical care of the

parties' child with the child's father. **AFFIRMED.**


    Dustin Ludemann of Farwell & Bruhn, Clinton, for appellant.

    Katelyn Kurt of Whitfield & Eddy, P.L.C., Des Moines, for appellee.


    Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

Two capable parents disagree on which of them should have physical care of their child, born in 2022.  The district court placed the child in the physical care of the father.  The mother appeals.

I.      **Factual and Procedural Background**

The mother and father never married, and their dating relationship ended before the child was born.  They live in separate towns about three hours apart.

Two months after the child was born, the parties agreed to an unofficial joint-physical-care schedule.  But because the child was breastfeeding, the father agreed to only having the child every other weekend.  When the child was approximately three and one-half months old, the father noticed the child had not been gaining weight and scheduled an appointment with a pediatrician in his area.  The examination revealed that, in the seven weeks since the child's two-month visit, the child had not gained weight and had dropped from the fortieth percentile in weight to the ninth percentile.  After completing the examination, the pediatrician called the Iowa Department of Health and Human Services (HHS) to report the undernourishment, and an investigation ensued.

Although the allegation of denial of critical care was not confirmed, while HHS's investigation was ongoing and the child was in the father's care, an alarming incident occurred.  At a follow-up doctor's visit scheduled by the father, the mother came as well.  As the father completed the paperwork for some recommended blood testing, the mother grabbed the child and attempted to flee with him, accompanied by the maternal grandmother who was waiting in the hallway.  Police intervened to return the child to the father.

Shortly after this incident, the father filed a motion seeking an emergency injunction. Prior to a hearing on that motion, the mother agreed to place the child in the father's physical care, subject to the mother's visitation every other weekend. About three months later, the court ruled on an application regarding temporary matters and granted the parents joint physical care until trial. Following the trial, the court granted the parents joint legal custody of the child, placed physical care of the child with the father, granted the mother visitation, and ordered the mother to pay the father child support.

The mother appeals. She challenges only the district court's physical-care determination. She argues for joint physical care or, alternatively, that the child be placed in her physical care. Both parties request appellate attorney fees.

## II.     Standard of Review and Legal Standards

Actions between unmarried parents regarding custody of, physical care of, and visitation with their minor children are equitable proceedings, so our review is de novo. *Ruden v. Peach*, 904 N.W.2d 410, 412 (Iowa Ct. App. 2017). With de novo review, "[w]e review the entire record and decide anew the factual and legal issues preserved and presented for review." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). Even with de novo review, deference is granted to the district court, which means we give weight to the district court's fact findings, and we will affirm "unless the district court failed to do substantial equity." *Id.*

As the mother and father never married each other, Iowa Code chapter 600B governs this dispute over physical care of their child. *See* Iowa Code § 600B.40(1) (2022). We apply the same standards to determine physical care in chapter 600B actions as we do in dissolution-of-marriage actions. *Id.*

§ 600B.40(2). When making a physical-care determination, the child's best interest serves as our ultimate guidepost. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). The goal in making a physical-care determination is to place the child in the environment most likely to lead to the child's best mental and physical health as well as social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We consider many factors when making a physical-care determination. *Id.* at 696. Even though the factors for determining legal custody listed in section 598.41(3) do not expressly apply to physical-care determinations, we still apply them to those determinations. *Id.* We also consider the factors spelled out in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *Id.*

## III. Joint Physical Care

The mother argued to the district court—and argues to us—that the parents should have joint physical care of the child. We recognize both parents are suitable caregivers. So our decision is based on four key, although not exclusive, factors: (1) stability and continuity of caregiving (sometimes referred to as "approximation" of the historical caregiving arrangement); (2) the parents' ability to communicate with and show respect to each other; (3) the degree of conflict between the parents; and (4) the degree to which parents agree about their approach to day-to-day matters. *Hansen*, 733 N.W.2d at 696–99.

Here, the child is so young that there is no established track record of historical caregiving, so the first factor does not provide much guidance. As to the next two factors, while the parents have some ability to communicate and show respect to each other, the difficulty communicating coupled with the degree of

conflict cuts against joint physical care. As to the fourth factor, the record reveals that the parties do not see eye-to-eye on most things. They have disagreed on such basic things as appropriate nicknames for the child, medical decisions, daily routines, and future education plans. This track record of disagreement also cuts against joint physical care. Finally, the significant physical distance between the parents' homes makes joint physical care unworkable. *See Teggatz v. Ellingson*, No. 19-1816, 2020 WL 2065944, at *2 (Iowa Ct. App. Apr. 29, 2020) (finding the hour travel time between the parties' homes was a "major obstacle" to joint physical care).

For all these reasons, we agree with the district court's decision not to grant joint physical care. We must decide which parent can best serve as the child's physical-care provider.

## IV.     Physical-Care Determination

The mother contends that, since joint physical care is not ordered, the best alternative is placing the child in her physical care. As both parents are suitable caregivers, the question becomes which parent can minister more effectively to the long-range needs of the child. *Hansen*, 733 N.W.2d at 695.

Both parties spend a great deal of their appellate briefing discussing their tumultuous relationship and little on focusing on the best interest of the child. "Physical care issues are not to be resolved based upon perceived fairness to the [*parents*], but primarily upon what is best for the *child*." *Id.* So we return the focus to which parent can best provide for the child.

We start with stability. *See Winter*, 223 N.W.2d at 166 (listing a parent's stability as one of the factors to consider in determining physical care). The father

provides a stable home and a routine for the child. He has a great deal of family support to assist him. Because the father runs his business at his residence, he is available during the workday to help meet the child's needs even when being watched primarily by family members. In comparison, the mother also has a flexible work schedule as a nanny and can have the child with her at work on most occasions. She does not have the same degree of family support as the father. Both parents have demonstrated adequate stability.

Providing for the child's medical and other needs cuts strongly in the father's favor. The parties take significantly different approaches to the child's medical needs. As to the underfeeding issue, we note that it was the father who recognized the problem, proposed reasonable solutions such as using formula or donor milk to supplement breastfeeding, and took action to fix it. The mother rejected the father's proposed solutions to the child's detriment and took no corrective action on her own, causing us to conclude the child is more apt to have his medical needs met if the father has physical care. And beyond the underfeeding issue, the father has been primarily, if not exclusively, responsible for scheduling and taking the child to medical appointments. This includes taking the child for a medical visit as recommended by the midwife who helped the mother deliver the baby at home, as the mother failed to do so despite representing that she did. The father has also taken the initiative to complete important paperwork for the child to obtain a birth certificate and social security card. When the child's medical insurance through the mother lapsed, he quickly secured other insurance for the child. The father has found a reliable pediatrician for the child in his area where he has taken the child for both routine checkups and various ailments. When the father takes the

child to doctor visits, he calls the mother when the doctor comes in so the mother can participate in the visit. The father's actions in addressing the child's medical needs, and including the mother in those efforts, demonstrate a level of stability and maturity that favors placing the child in his physical care.

We find it unnecessary to further parse the details of the various pros and cons the parties bring to the table. We reiterate that both parents are suitable caregivers who have established a loving relationship with the child. *See* Iowa Code § 598.41(3)(a). But, given our conclusion that joint physical care is not a workable option, it is necessary to place the child in the physical care of one parent. We conclude, as did the district court, that the father is better able to effectively meet the long-range needs of the child at this time. *See Winter*, 223 N.W.2d at 166 ("The issue is ultimately decided by determining under the whole record which parent can minister more effectively to the long-range best interests of the [child]." (quoting *In re Marriage of Bowen*, 219 N.W.2d 683, 687–88 (Iowa 1974))). As a result, we affirm the district court's decision to place the child in the father's physical care.

## V.     Appellate Attorney Fees

Each party requests an award of appellate attorney fees from the other. Iowa Code section 600B.26 permits an award of appellate attorney fees to the prevailing party in an action to determine custody or visitation under chapter 600B. *Worth v. Geinitz*, No. 23-1080, 2024 WL 2316657, at *3 (Iowa Ct. App. May 22, 2024). Appellate attorney fees may be awarded to the prevailing party at our discretion, but they are not awarded as a matter of right. *Id.* When considering a request for attorney fees, we weigh the needs of the prevailing party, the other

party's ability to pay, and whether the party was obligated to defend the district court's decision on appeal. *Id.*

As the mother is not the prevailing party, there is no statutory authority to award her fees. As to the father's claim for fees, he is the prevailing party, and he was obligated to defend the district court's decision on appeal. He is eligible to receive an appellate-attorney-fee award. However, when considering the father's needs and the mother's abilities to pay, we do not find an award of appellate attorney fees to be equitable. For these reasons, we decline to award either party appellate attorney fees.

**AFFIRMED.**