# IN THE COURT OF APPEALS OF IOWA

No. 24-1652
Filed August 20, 2025

**MYKEL JOHNAVON RATLIFF,**
        Plaintiff-Appellant,

**vs.**

**RICHELLE SHERRYANN WERNER,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Marshall County, Amy M. Moore,

Judge.


        The father appeals from a custody decree placing physical care with the

mother. **AFFIRMED.**


        Joel C. Waters of Kaplan & Frese, LLP, Marshalltown, for appellant.

        James L. Sines of Ackley, Kopecky & Kingery, Cedar Rapids, for appellee.


        Considered without oral argument by Chicchelly, P.J., and Buller and

Sandy, JJ.

**BULLER, Judge.**

Mykel Ratliff appeals from a custody decree placing physical care of his child with Richelle Werner.  He only contests the physical-care determination.  And we affirm, finding that placement with Richelle is in the child's best interests.

## I.      Background Facts and Proceedings

The parties were never married but share a child born in 2022—when Richelle was nineteen years old and Mykel was seventeen.  They separated a week or two after Richelle told Mykel she was pregnant with their child.  Mykel was not involved in prenatal planning and appointments because he was still in high school.  The child lived with Richelle, and she made most care decisions.  The parties came to an informal agreement on child support and custody.

In 2023, when the parties lived twelve minutes away from each other, Mykel petitioned for joint physical care or a set visitation schedule due to a breakdown in communication.  In the temporary-matters order, the court granted Mykel visitation on alternating weekends and one weekly overnight visit.  But when Richelle and the child moved two-and-a-half hours away to Avoca to live with her fiancé, the parties agreed to visitation every other Thursday night until Monday morning.

As of trial, Mykel worked as a construction laborer and lived in Montour— near both maternal and paternal grandparents and the child's healthcare providers—with his girlfriend and her parents, where he intends to remain for the near future.  He expressed concerns at trial about Richelle's lack of communication regarding her living situation and vacation plans.

Richelle has served as the child's primary caretaker since birth and said communication between her and Mykel improved over the year leading up to trial.

She was enrolled as a full-time pre-pharmacy student at Drake University with the intention of graduating with a pharmacy degree. She also worked various part-time jobs. And she testified regarding her regimented daily routine coordinating daycare, commuting to Des Moines from her home in Avoca, school, and work with the help of her fiancé and his parents.

Richelle's fiancé testified about his positive relationship with the child and enrollment at Creighton University in a dual-degree law and business program. The couple both explained the uncertainty of their residency after their respective graduations, but they thought it would be in the Des Moines, Avoca, Mason City, or Omaha, Nebraska areas. As of trial, Des Moines seemed like a strong possibility because of Richelle's enrollment at Drake University and central-Iowa clerkship opportunities for her fiancé.

In deciding physical care, the district court noted the parties were able to overcome initial tension in their co-parenting relationship and that:

> this matter presents the unfortunately rather rare circumstance where the child at issue enjoys a loving and stable parenting environment in both parent[s'] homes. The parties have done a commendable job of co-parenting[,] and both parties notably refrained from disparaging the other at trial. Both parties' paramours also appear to have healthy relationships with the child, and the child enjoys contact with both sets of grandparents.

The court had no concerns that either parent would provide an improper home environment for the child and opined "they would be ideal candidates to enjoy shared physical care" if it weren't for the uncertainty of Richelle's future residence and the current five-hour-round-trip distance apart from each other. But the court found Richelle to be more suitable for physical care as the historical primary caregiver. Mykel received liberal visitation rights.

Mykel appeals, urging physical care of the child should have been placed with him. He does not seek joint physical care because of the distance between their homes.

## II.    Standard of Review

We review custody and care decisions de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "We review the entire record and decide anew the factual and legal issues preserved and presented for review." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). While we are not bound by the district court's fact findings, we do give them weight—especially credibility determinations. *Thorpe*, 949 N.W.2d at 5.

## III.    Discussion[1]

"The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hensch*, 902 N.W.2d at 824 (citation omitted). Although this action is governed by Iowa Code chapter 600B (2023), we look at the factors in section 598.41(3) to determine physical care. *See* Iowa Code § 600B.40(2) (providing "section 598.41 shall apply" to chapter 600B proceedings). Section 598.41 includes a series of nonexclusive factors to guide us when deciding custody and care. And our case law sets forth additional factors. *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). While we afford some weight to

---

[1] Richelle's brief exemplifies a common issue: instead of a digitally exported copy of a word processing document, her brief was printed out, scanned back into the computer, and then filed as a scanned image. These scanned documents are not searchable as required by our rules. Iowa R. App. P. 6.903(1)(d) (previously rule 6.903(1)(c)). We request parties to please stop filing scanned-image briefs.

the parent who historically functioned as the primary caregiver, this factor is not dispositive. *See Flick v. Stoneburner*, No. 15-1930, 2016 WL 2743449, at *2 (Iowa Ct. App. May 11, 2016). Our overriding consideration "is the best interests of the child." Iowa R. App. P. 6.904(3)(n).

Mykel's argument on appeal is that his "living arrangement provides the most wholesomeness and stability for the child." He argues Richelle's uncertainty about where she will eventually live, lack of communication, and unilateral care decisions early in the child's life warrant placing the child in his physical care. In our review of the record, we agree with the district court's conclusion that it is in the child's best interest for Richelle to have physical care.

Both parents are suitable caretakers for the child with appropriate home environments. In cases like this one, "we note the district court had the parties before it and was able to observe and evaluate the parties as custodians." *In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996). And the district court noted that Richelle "presented as a very mature, focused, and organized individual and parent" who supports the child's relationship with Mykel. While not dispositive, we also give weight to Richelle's role as the historical primary caregiver and decision maker for the child. *See Flick*, 2016 WL 2743449, at *2. In our de novo review of the record, we can tell both parents clearly love the child and that Richelle will support Mykel receiving "regular and liberal parenting time" for visitations wherever she and her fiancé eventually settle. Overall, we see no basis to reverse the district court's physical-care ruling.

**AFFIRMED.**